## CONTINENTAL AIR LINES, INC., a Nevada corporation, Petitioner,

v.

## Maynard W. KEENAN, Jr., Respondent.

### No. 84SC460.

Supreme Court of Colorado,
En Banc.

Jan. 20, 1987.

Holland & Hart, John M. Husband, Denver, for petitioner.

Epstein, Epstein & Lozow, P.C., Donald L. Lozow, Bradley A. Lozow, Denver, for respondent.

Sherman & Howard, Theodore A. Olsen, Denver, for amicus curiae, Mountain States Employers Council.

Feiger & Hyman, Lynn D. Feiger, Thomas A. Feldman, Denver, for amicus curiae, plaintiff Employment Lawyers Ass'n.

VOLLACK, Justice.

The petitioner, Continental Air Lines, Inc. (Continental), appeals from the court of appeals' unpublished opinion, *Keenan v. Continental Air Lines, Inc.*, No. 83CA1104 (Oct. 18, 1984), which held that

an employer's distribution to employees of handbooks or policy manuals which contain specific procedures for termination of employment, when relied upon by an employee and supported by the consideration of continued service, may result in the employer becoming contractually bound to comply with those procedures. The court of appeals concluded that there were material questions of fact; therefore, summary judgment was inappropriate. We granted certiorari review, and we reverse in part and remand with directions.

## I.

The respondent, Maynard W. Keenan, Jr., was employed by Continental from May 1974 to September 1981, when he was discharged. Keenan then filed this suit alleging wrongful discharge based on the failure of Continental to follow procedures set forth in its policy manual or handbook. Keenan alleged in his complaint that he was given "certain job security assurances" contained in Continental's handbook. At his deposition, Keenan stated that he had not relied on any policies contained in the manual at the time he became employed and stated that he did not receive a copy of that manual until after his employment had started. Subsequently, however, Keenan contradicted his deposition testimony in an affidavit and stated that he was given a copy of the handbook when he was hired.

Continental published the handbook before Keenan was hired. Periodically, the handbook was subject to revision by Continental. The pertinent portion of the handbook concerns a corporate hearing procedure for management personnel who wish to challenge a discipline, discharge, or other job action taken by the company. The hearing procedure was revised by Continental on February 1, 1979, prior to the time Keenan assumed a management position. There is no evidence that Keenan participated in the revision or negotiated for the terms of the handbook either prior to accepting his initial position or prior to accepting the management position. After Keenan was discharged, he made a request for a hearing pursuant to the applicable portion of the handbook. Keenan was denied this hearing.

The trial court granted Continental's motion for summary judgment. Keenan appealed, and the court of appeals reversed and remanded the cause.

## II.

We granted certiorari to determine whether an employee may sue an employer for breach of contract on the theory that an employee manual, unilaterally published by the employer, may serve as a basis for altering the terms of an employment otherwise terminable at will. Courts have taken varied and sometimes contradictory approaches to this question. Several courts have concluded that employee manuals setting forth termination procedures are not contractually binding on the employer. *E.g., Beidler v. W.R. Grace, Inc.,* 461 F.Supp. 1013 (E.D.Pa.1978), *aff'd mem.,* 609 F.2d 500 (3d Cir.1979); *Muller v. Stromberg Carlson Corp.,* 427 So.2d 266 (Fla.Dist.Ct.App.1983); *Shaw v. S.S. Kresge Co.,* 167 Ind.App. 1, 328 N.E.2d 775 (1975); *Gates v. Life of Montana Insurance Co.,* 196 Mont. 178, 638 P.2d 1063 (1982); *Edwards v. Citibank, N.A.,* 74 A.D.2d 553, 425 N.Y.S.2d 327 (1980); *Griffin v. Housing Authority,* 62 N.C.App. 556, 303 S.E.2d 200 (1983). Other courts have held that an employee manual on termination procedures is a unilateral offer of employment for which continued service by the employee may constitute consideration and acceptance. *See, e.g., Carter v. Kaskasia Community Action Agency,* 24 Ill. App.3d 1056, 322 N.E.2d 574 (1974); *Dahl v. Brunswick Corp.,* 227 Md. 471, 356 A.2d 221 (1976); *Toussaint v. Blue Cross & Blue Shield,* 408 Mich. 579, 292 N.W.2d 880 (1980); *Pine River State Bank v. Mettille,* 333 N.W.2d 622 (Minn.1983); *Southwest Gas Corp. v. Ahmad,* 99 Nev. 594, 668 P.2d 261 (1983); *Langdon v. Saga Corp.,* 569 P.2d 524 (Okla.Ct.App.1976); *Hercules Powder Co. v. Brookfield,* 189 Va. 531, 53 S.E.2d 804 (1949). Still another approach is

that an employee manual may be binding on the employer not on the theory of contract but on the basis of the employee's reasonable and detrimental reliance on the terms of the manual. *See, e.g., Cleary v. American Airlines, Inc.,* 111 Cal.App.3d 443, 168 Cal.Rptr. 722 (1980); *Toussaint,* 408 Mich. 579, 292 N.W.2d 880; *Arie v. Intertherm, Inc.,* 648 S.W.2d 142 (Mo.Ct. App.1983); *Thompson v. St. Regis Paper Co.,* 102 Wash.2d 219, 685 P.2d 1081 (1984).

There is similar uncertainty in Colorado concerning the formulation of the appropriate standard in such cases. *See Garcia v. Aetna Finance Co.,* 752 F.2d 488 (10th Cir.1984) (termination policy set forth in manual was a unilateral expression of policy by the employer, not an employment contract between employee and employer for a definite term); *Salimi v. Farmers Insurance Group,* 684 P.2d 264 (Colo.App. 1984) (employer may become contractually bound to comply with termination procedures in handbook when procedures are relied on by employee and supported by the consideration of continued service); *cf. Ritter v. Colorado Interstate Gas Co.,* 593 F.Supp. 1279 (D.Colo.1984) (declining to hear state law breach of employment contract claims because of uncertainty regarding Colorado's readiness to modify the "at will" employment doctrine so as to afford discharged employees greater rights).

The parties and the amici curiae to this proceeding have recognized that resolution of the question of the propriety of the trial court's decision requires the articulation of some definitive standards to guide trial courts in resolving an employee's legal or equitable claims based on an employer's failure to follow the termination procedures set out in an employee manual unilaterally published by the employer and not expressly made a part of the original employment agreement.

### III.

■ An employee who is hired in Colorado for an indefinite period of time is an "at will employee," whose employment may be terminated by either party without cause and without notice, and whose termination does not give rise to a cause of action. *See, e.g., Garcia v. Aetna Finance Co.,* 752 F.2d 488 (10th Cir.1984); *Smith v. Montgomery Ward & Co., Inc.,* 567 F.Supp. 1331 (D.Colo.1983); *Johnson v. Jefferson County Board of Health,* 662 P.2d 463 (Colo.1983); *Hughes v. Mountain States Telephone and Telegraph Co.,* 686 P.2d 814 (Colo.App.1984); *Justice v. Stanley Aviation Corp.,* 35 Colo.App. 1, 530 P.2d 984 (1974); *Lampe v. Presbyterian Medical Center,* 41 Colo.App. 465, 590 P.2d 513 (1978). This presumption of "at will" employment, however, should not be considered absolute but rather should be rebuttable under certain circumstances. We adopt neither the categorical rule that an employee manual automatically becomes part of the employment contract and that an employee can be terminated only in accordance with its terms, nor do we adopt the contrary rule that such manuals are no more than unilateral expressions of general company policies which have no bearing on the employee's contractual rights.

■ An employee originally hired under a contract terminable at will may be able to enforce the termination procedures in an employee manual under one of the following alternative theories. The employee may be entitled to relief under ordinary contract principles if he can demonstrate, first, that in promulgating the termination procedures the employer was making an offer to the employee—that is, the employer manifested his willingness to enter into a bargain in such a way as to justify the employee in understanding that his assent to the bargain was invited by the employer and that the employee's assent would conclude the bargain, Restatement (Second) of Contracts § 24 (1981)—and second, that his initial or continued employment constituted acceptance of and consideration for those procedures.[1] *See, e.g., Dahl,* 227 Md. 471,

---

1.  In such a situation the termination procedures may be construed as an offer of a unilateral contract. The operation of such contracts has been explained as follows:

356 A.2d 221; *Pine River State Bank,* 333 N.W.2d 622; *Southwest Gas Corp.,* 99 Nev. 594, 668 P.2d 261; *Langdon,* 569 P.2d 524; *Hercules Powder Co.,* 189 Va. 531, 53 S.E.2d 804.

■ Alternatively, even if the requisites for formation of a contract are not found, the employee would be entitled to enforce the termination procedures under a theory of promissory estoppel if he can demonstrate that the employer should reasonably have expected the employee to consider the employee manual as a commitment from the employer to follow the termination procedures, that the employee reasonably relied on the termination procedures to his detriment, and that injustice can be avoided only by enforcement of the termination procedures. *See, e.g., Cleary,* 111 Cal. App.3d 443, 168 Cal.Rptr. 722; *Toussaint,* 408 Mich. 579, 292 N.W.2d 880; *Arie,* 648 S.W.2d 142; *Thompson,* 102 Wash.2d 219, 685 P.2d 1081; *see also Kiely v. St. Germain,* 670 P.2d 764 (Colo.1983); *Vigoda v. Denver Urban Renewal Authority,* 646 P.2d 900 (Colo.1982); Restatement (Second) of Contracts §§ 2 and 90 (1981). Unless this preliminary factual showing is sufficient to overcome the presumption of an employment terminable at the will of either party, the employee's cause of action should fail.

### IV.

■ Under C.R.C.P. 56(c), summary judgment is proper only when the pleadings, affidavits, depositions, or admissions establish that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *E.g. Huydts v. Dixon,* 199 Colo. 260, 606 P.2d 1303 (1980). The burden of establishing the nonexistence of a genuine issue of material fact is on the moving party. *E.g., Celotex Corp. v. Catrett,* 477 U.S. ——, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Urban v. Beloit Corp.,* 711 P.2d 685 (Colo. 1985); *Ginter v. Palmer and Co.,* 196 Colo. 203, 585 P.2d 583 (1978). This burden has two distinct components: an initial burden of production on the moving party, which burden when satisfied then shifts to the nonmoving party, and an ultimate burden of persuasion, which always remains on the moving party. *See* 10A C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 2727 (2d ed. 1983).

■ Whenever summary judgment is sought, the moving party bears the initial responsibility of informing the court of the basis for his motion and identifying those portions of the record and of the affidavits, if any, which he believes demonstrate the absence of a genuine issue of material fact. *Celotex,* 477 U.S. at ——, 106 S.Ct. at 2553, 91 L.Ed.2d at 274. In a case where a party moves for summary judgment on an issue on which he would not bear the burden of persuasion at trial, his initial burden of production may be satisfied by showing the court that there is an absence of evidence in the record to support the nonmoving party's case.[2] *Id.,* 477 U.S. at ——, 106 S.Ct. at 2554, 91 L.Ed.2d at 275.

In a unilateral or one-sided contract only one party promises a performance as the exchange for an act other than a promise bargained for and performed by the promisee. The promise conditioned upon performance of the act is not legally binding until that event occurs. If A says to B "I will pay you $100 if you will plow this field," B's act of plowing the field is both performance of the condition to A's promise, or the acceptance of A's offer, and also it is the giving by B of the price or consideration for A's promise.
L. Simpson, *Handbook of the Law of Contracts* § 6, p. 9 (1954).

**2.** In his dissent in *Celotex,* Justice Brennan discussed the mechanics for discharging the initial burden of production when the moving party is seeking summary judgment on the ground that the nonmoving party—who will bear the burden of persuasion at trial—has no evidence:

Plainly, a conclusory assertion that the nonmoving party has no evidence is insufficient. Such a "burden" of production is no burden at all and would simply permit summary judgment procedure to be converted into a tool for harassment. Rather, as the Court confirms, a party who moves for summary judgment on the ground that the nonmoving party has no evidence must affirmatively show the absence of evidence in the record. This may require the moving party to depose the nonmoving party's witnesses or to establish the inadequacy of documentary evidence. If there is literally no evidence in the record,

Once the moving party has met this initial burden of production, the burden shifts to the nonmoving party to establish that there is a triable issue of fact. If the nonmoving party cannot muster sufficient evidence to make out a triable issue of fact on his claim, a trial would be useless and the moving party is entitled to summary judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. ——, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

In a case such as this, when an employer seeks summary judgment on an employee's claim that the employer was bound to follow termination procedures set forth in a manual unilaterally promulgated by the employer, the employer would have the initial burden of showing that there was nothing in the record to rebut the presumption that the employee was terminable at will. If the employer makes such a showing, the burden would then shift to the employee to show that there is a triable factual issue on whether the termination procedures constituted a unilateral offer for which the employee's initial or continued employment constituted an acceptance and provided the requisite consideration, or that the termination procedures constituted a promise on which the employee reasonably and detrimentally relied. If the employee shows there is a triable issue of fact in regard to these matters, he has made enough of a showing to withstand a summary judgment motion. If he does not, summary judgment for the employer is appropriate.

Summary judgment for Continental was improperly granted because the trial court incorrectly assumed that termination procedures in a company manual could not under any circumstances be binding on the employer in a case where the employee was originally terminable at will. The trial court erred in this respect and should have considered Continental's motion under the two alternative theories of liability previously discussed. The court of appeals also erred when it simply reversed the summary judgment and remanded the case to the trial court for trial. The judgment is reversed in part and the case is remanded to the court of appeals with directions that it be returned to the trial court for reconsideration of Continental's motion under the standards set forth herein.

the moving party may demonstrate this by reviewing for the court the admissions, interrogatories and other exchanges between the parties that are in the record. Either way, however, the moving party must affirmatively demonstrates that there is no evidence in the record to support a judgment for the nonmoving party.

477 U.S. at ——, 106 S.Ct. at 2557–58, 91 L.Ed.2d at 279 (citations omitted).