Spencer CRONK, Albert Girardi, and David Wilson, Plaintiffs–Appellants and Cross–Appellees,

v.

INTERMOUNTAIN RURAL ELECTRIC ASSOCIATION, a Colorado corporation; and Stanley Lewandowski, Jr., individually, Defendants–Appellees and Cross–Appellants.

No. 86CA0039.

Colorado Court of Appeals, Div. IV.

July 21, 1988.

Rehearing Denied Sept. 8, 1988.

Certiorari Denied Nov. 28, 1988.

Feiger & Hyman, Thomas A. Feldman, Lynn D. Feiger, Denver, for plaintiffs-appellants and cross-appellees.

Howe and Porter, P.C., Edwin A. Howe, II (brief only), Hansen and Holmes, P.C., Robert W. Hansen (oral argument), Denver, Banta, Hoyt, Banta, Greene, Hannen & Everall, P.C., Richard D. Greene, Englewood, for defendants-appellees.

METZGER, Judge.

The plaintiffs, Spencer Cronk, Albert Girardi, and David Wilson, appeal the summary judgment entered in favor of defendants, Intermountain Rural Electric Association (IREA) and Stanley R. Lewandowski, Jr. (Lewandowski). The plaintiffs assert

that, because disputed issues of material fact remained, the trial court erred in granting summary judgment on their claims for wrongful discharge, breach of employment contract, tortious interference with contract, tortious interference with prospective financial advantage, and outrageous conduct. Plaintiff Cronk further asserts that the court erred in granting a summary judgment on his claim of promissory estoppel because disputed issues of material fact remained. We affirm in part, reverse in part, and remand for further proceedings.

The plaintiffs were employed by IREA, then a public utility. Lewandowski was IREA's general manager. The plaintiffs were discharged at various times in 1983 and thereafter filed this action.

As a basis for their claims, the plaintiffs alleged that during the last few years of their employment with IREA, they were directed by Lewandowski to engage in illegal and irregular practices, including waiving extension fees for favored developers, requiring employees to keep an "owe" list of favors done, and awarding contracts for work without competitive bidding. Theses practices were the subject of an investigation by the Public Utilities Commission, then IREA's regulatory authority.

The plaintiffs also alleged that, during the pendency of this PUC investigation of IREA's practices, two persons were elected to IREA's Board of Directors, over the opposition of Lewandowski. As a result of the investigation and the election of these Board members, Lewandowski became preoccupied with the loyalty of IREA's employees. Because of his "preoccupation," Lewandowski hired and/or retained employees who were personally loyal to him, but who were not necessarily qualified or performing satisfactory work.

Plaintiff Cronk asserted that, because he found it increasingly difficult to support Lewandowski's policies, he sought a voluntary transfer from the position of Director of Operations to a non-management position. He explained his opposition to and disapproval of the questionable practices to his immediate supervisor, Pope, when he requested the transfer. Pope indicated that the transfer could be arranged, and promised that Cronk would be permitted to take the transfer without reprisal. Thereafter, Cronk applied for the transfer. However, on October 24, 1983, just prior to the transfer, Cronk was informed that his performance was unsatisfactory and his employment was terminated. Prior to this notice of termination, Cronk's earlier performance evaluations had been uniformly satisfactory.

Plaintiff Albert Girardi alleged that he was terminated from his position as Manager of Engineering because he testified truthfully before the PUC during the course of its investigation. Girardi also asserted that, because he was aware of Lewandowski's concerns with loyalty, and because of warnings and threats he received, he tendered his resignation, to be effective December 30, 1983. Girardi was terminated on December 1, 1983, the day after his testimony.

Plaintiff David Wilson was an engineer in the underground department, whose job was to insure that construction companies complied with contract requirements. He alleged that in 1983 he began to experience significant difficulties with the company's major contractor. After he attempted to persuade the contractor to comply with the contract requirements, the contractor complained to Lewandowski. Wilson alleged that, as a result of these complaints, and a further incident in which he was seen to have in his possession a notice of the company's annual consumer meeting, Lewandowski concluded that Wilson was "disloyal" and ordered Wilson's termination.

The plaintiffs alleged that the actions of IREA and Lewandowski constituted a breach of an implied employment contract, as established by the provisions of the employee personnel manual and supervisors' manual, distributed in 1978 and revised in later years. They also asserted that the defendants' actions constituted wrongful discharge, tortious interference with contract, tortious interference with prospective financial advantage, and outrageous conduct. Cronk, individually, alleged that the

defendants were liable for wrongful discharge under a theory of promissory estoppel.

Defendants answered the complaint and filed a motion for summary judgment before significant discovery could be completed. Plaintiffs then filed an amended complaint. Thereafter, the trial court granted the defendants' motion for summary judgment in its entirety and this appeal followed.

## I.

The plaintiffs first contend that the reason for their discharge was a material fact in dispute and that, therefore, the trial court erred in granting defendants' motion for summary judgment on the issue of wrongful discharge. We agree.

Summary judgment is a drastic remedy and is never warranted except on a clear showing that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Huydts v. Dixon*, 199 Colo. 260, 606 P.2d 1303 (1980). The party opposing the motion is entitled to the benefit of all inferences which may be drawn from the facts and any doubts must be resolved against the moving party, who has the burden of demonstrating the absence of a genuine issue of fact. *Ginter v. Palmer & Co.*, 196 Colo. 203, 585 P.2d 583 (1978). Summary judgment is erroneously granted if reasonable persons might reach different conclusions regarding the facts. *Abrahamsen v. Mountain States Telephone & Telegraph Co.*, 177 Colo. 422, 494 P.2d 1287 (1972).

Employment for an indefinite duration is generally terminable at will. *Lampe v. Presbyterian Medical Center*, 41 Colo.App. 465, 590 P.2d 513 (1978). However, this general rule does not apply if a terminated employee shows that he was discharged for exercising a specifically enacted right or duty. *Corbin v. Sinclair Marketing, Inc.*, 684 P.2d 265 (Colo.App. 1984). To qualify for this exception, a plaintiff must prove (1) that he refused to perform an action (2) ordered by his employer (3) which would violate a specific statute (4) whose terms are more than a broad general statement of policy and (5) that his termination resulted from his refusal. *Farmer v. Central Bancorporation, Inc.*, 761 P.2d 220 (Colo.App. 1988).

Plaintiffs alleged that the employer's policies and Lewandowski's directives required them to violate several specific public utility statutes. Plaintiffs note that § 40-7-106, C.R.S. (1984 Repl.Vol. 17) mandates that any public utility employee "who violates or fails to comply with or who procures, aids, or abets any violation by any public utility" of any public utility statute is guilty of a misdemeanor. Therefore, they argue that they could not participate in awarding preferences to developers, in contravention of § 40-3-106, C.R.S. (1984 Repl.Vol. 17), nor could Girardi refuse to testify truthfully before the PUC and, thus, violate § 40-6-103(2), C.R.S. (1984 Repl.Vol. 17). They contend in their affidavits that their resistance and expressed disapproval of these improper practices was the reason for their discharge. Defendants argued, without any supporting affidavits, that plaintiffs were discharged for cause. The trial court resolved this factual dispute and, in so doing, erred.

## II.

The plaintiffs next contend that the trial court erroneously granted defendants' motion for summary judgment on their claim asserting the breach of an implied employment contract. They argue that the factual issue of the existence of an implied employment contract remained. We agree.

An employee who is hired for an indefinite period of time is an at-will employee, whose employment may be terminated by either party without cause and without notice, and whose termination does not give rise to a cause of action; however, the presumption of at-will employment is not absolute. *Continental Air Lines, Inc. v. Keenan*, 731 P.2d 708 (Colo.1987). An employee may seek to show that an employee handbook is enforceable as a unilateral contract of employment. *Wing v. J.M. B. Property Management Corp.*, 714 P.2d 916 (Colo.App.1985). Thus, an employer's

distribution to employees of handbooks or policy manuals, which contain specific procedures for termination of employment, when relied upon by an employee and supported by the consideration of continued service, may result in the employer becoming contractually bound to comply with those procedures. *Churchey v. Adolph Coors Co.*, 759 P.2d 1336 (Colo.1988); *Continental Air Lines, Inc. v. Keenan, supra; Salimi v. Farmers Insurance Group*, 684 P.2d 264 (Colo.App.1984).

Although the interpretation of an established written contract is generally a question of law and, thus, subject to independent reevaluation by an appellate court, the issue whether the parties have entered into a contract is a question of fact. "More precisely, when the existence of a contract is in issue, and the evidence is conflicting or admits of more than one inference, it is for the jury to decide whether a contract in fact exists." *I.M.A., Inc. v. Rocky Mountain Airways, Inc.*, 713 P.2d 882 (Colo. 1986); *see also Continental Airlines, Inc. v. Keenan, supra.*

The trial court here ruled, as a matter of law, that "due to the general nature of the IREA employment manuals, coupled with the written disclaimer contained therein, no contract, implied or express, existed." However, the record shows that the employee manual is not comprised of general provisions. Instead, it sets forth certain express events which might cause the employee to be terminated. In addition, the manual states that other reasons, not so expressed, could be grounds for termination, "as long as such legitimate reasons constitute just cause."

Despite the factual averments by the plaintiffs, the trial court ruled that the provisions of the manual could not lead the employees to rely reasonably on its substantive and procedural protections. The disclaimer upon which the trial court relied was added after the plaintiffs commenced their employment with IREA. Additionally, in their affidavits opposing defendants' motion for summary judgment, plaintiffs asserted that they had relied on the employee manual provisions concerning termi-

nation. Thus, since controverted issues of material fact remained concerning whether IREA was contractually bound by the terms of the employee manual, the trial court erred in entering summary judgment as to this claim. *See I.M.A., Inc. v. Rocky Mountain Airways, Inc., supra.*

### III.

The plaintiffs also argue that the trial court erred in dismissing their claims against Lewandowski for intentional interference with contractual relations and for tortious interference with prospective financial advantage. Again, we agree.

Under the theory of intentional interference with contractual relations, an officer or director of a corporation generally will not be held personally liable for inducing the corporation's breach of its contract if the officer or director is acting within the scope of his or her official duties. *Zappa v. Seiver*, 706 P.2d 440 (Colo.App.1985). However, if the officer or director is motivated solely by a desire to induce the corporation to breach its contract with the plaintiff or to interfere in the contractual relationship between the corporation and the plaintiff, the interference is improper. *See Trimble v. City & County of Denver*, 697 P.2d 716 (Colo.1985). Motivation is a question of fact. *Zappa v. Seiver, supra.*

Similarly, the crucial question in determining liability for tortious interference with prospective financial advantage is whether the defendant's interference was intentional and improper. *Dolton v. Capitol Federal Savings & Loan Ass'n*, 642 P.2d 21 (Colo.App.1981). To resolve that issue, several factors must be considered, including the defendant's motivation. *Dolton v. Capitol Federal Savings & Loan Ass'n, supra.*

In granting summary judgment as to these claims, the trial court determined that plaintiffs failed to allege that Lewandowski acted improperly, and it concluded that he did not act improperly. However, the amended complaint reveals that the plaintiffs alleged that Lewandowski acted

intentionally and beyond the scope of his official duties. These allegations are sufficient. *See Zappa v. Seiver, supra,* and *Dolton v. Capitol Federal Savings & Loan Ass'n, supra.* Moreover, in reaching its conclusion concerning the impropriety of Lewandowski's actions, the trial court necessarily resolved the disputed factual issue of his motivation. This was error. *See Trimble v. City & County of Denver, supra.*

### IV.

We reject plaintiffs' argument that the trial court also erred in dismissing their claims for outrageous conduct as being insufficient as a matter of law. Based on the record before us, we agree that the plaintiffs' allegations do not describe conduct which is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Rugg v. McCarty,* 173 Colo. 170, 476 P.2d 753 (1970); *see also Churchey v. Adolph Coors Co., supra.*

### V.

Finally, Cronk, individually, asserts that, because controverted issues of material fact existed, the trial court erred in entering summary judgment on his claim for promissory estoppel. We agree.

Cronk asserts two theories of promissory estoppel based upon two separate promises: the provisions in the employment manuals and the assurances of his supervisor that a voluntary demotion would not bring on reprisals.

As to his first theory, we note that an employee is entitled to enforce the termination procedures in an employee manual if he can demonstrate that the employer should reasonably have expected the employee to consider the manual as a commitment from the employer to follow the termination procedures, that the employee reasonably relied on the termination procedures to his detriment, and that injustice can be avoided only by enforcement of the termination procedures. *Continental Air Lines, Inc. v. Keenan, supra.* These issues are for the trier of fact to determine. *Continental Air Lines, Inc. v. Keenan, supra.* Thus, summary judgment was improper.

As to Cronk's second theory, that his supervisor promised no reprisals for his voluntary demotion and thus created an enforceable contract, we note that the trial court resolved the factual issue concerning whether an enforceable promise had been made. This constituted error. *See Vigoda v. Denver Urban Renewal Authority,* 646 P.2d 900 (Colo.1982).

We decline to award attorney fees as requested in defendants' cross-appeal because we do not deem this appeal to be frivolous or groundless.

The summary judgment dismissing plaintiffs' claim based upon outrageous conduct is affirmed. The judgment in all other respects is reversed, and the cause is remanded with instructions to reinstate plaintiffs' amended complaint and to conduct such further proceedings as are appropriate.

KELLY, C.J., and TURSI, J., concur.