**Edwin W. KEIL, Petitioner,**

v.

**The INDUSTRIAL CLAIM APPEALS OFFICE of the State of Colorado, Colorado Division of Employment and Training, and Metwest, Inc., Respondents.**

**No. 92CA0639.**

Colorado Court of Appeals, Div. I.

Jan. 7, 1993.

William E. Benjamin, Boulder, for petitioner.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., John R. Parsons, Asst. Atty. Gen., Denver, for respondents Indus. Claim Appeals Office and Colorado Div. of Employment and Training.

No appearance for respondent Metwest, Inc.

Opinion by Judge DAVIDSON.

Edwin W. Keil, claimant, was discharged from his employment with respondent, Metwest, Inc., for refusing to comply with a reasonable instruction. He seeks review of a final order of the Industrial Claim Appeals Panel which disqualified him from the receipt of unemployment compensation benefits, contending primarily that respondent's failure to comply with its three-step discipline policy requires that he be awarded benefits. We disagree and affirm.

I.

■ We first conclude that the hearing officer did not err in finding that claimant should be disqualified pursuant to § 8–73–108(5)(e)(VI) (deliberate disobedience of a reasonable instruction of an employer).

The hearing officer found that claimant had been given adequate notice that he was at risk of losing his job for failing to complete assigned tasks and preventive maintenance inspection duties, that claimant had refused to comply with a reasonable instruction by working on a lawn trimmer for a co-worker after being instructed not to do so by his immediate supervisor, and that claimant was discharged after his supervisor observed claimant working on the lawn trimmer prior to completing his regular work.

■ These findings, supported by substantial, although sometimes conflicting evidence, may not be disturbed on review.

*Jones v. Industrial Commission,* 705 P.2d 530 (Colo.App.1985). The findings support the conclusion that claimant deliberately disobeyed a reasonable instruction of employer, and thus, a disqualification pursuant to § 8–73–108(5)(e)(VI) was warranted. *See Rose Medical Center Hospital Ass'n v. Industrial Claim Appeals Office,* 757 P.2d 1173 (Colo.App.1988).

## II.

■ An employee is entitled to a full award of benefits if he is unemployed through no fault of his own. *Zelingers v. Industrial Commission,* 679 P.2d 608 (Colo.App.1984). Fault is not necessarily related to culpability, but has been defined as a volitional act or the exercise of some control in light of the totality of the circumstances. *Collins v. Industrial Claim Appeals Office,* 813 P.2d 804 (Colo.App.1991); *Zelingers v. Industrial Commission, supra.*

■ Even if the findings of the hearing officer support the application of one of the disqualifying sections of the statute, a claimant may still be entitled to benefits if the totality of the circumstances establishes that the claimant was discharged through "no fault" of his own. *Zelingers v. Industrial Commission, supra.*

■ Accordingly, in reliance on *Hospital Shared Services v. Industrial Commission,* 677 P.2d 447 (Colo.App.1984) and *Continental Air Lines, Inc. v. Keenan,* 731 P.2d 708 (Colo.1987), claimant argues that he was not "at fault" for his separation because he had not been given the benefit of employer's stated disciplinary procedures prior to his termination. We disagree.

## A.

The Colorado Employment Security Act, § 8–73–101, et seq., C.R.S. (1986 Repl.Vol. 3B) delegates to the hearing officer and the Panel the responsibility of applying the standards adopted by the General Assembly to determine whether, under all the circumstances of the case, a particular separation from employment should result in an award of benefits. *School District No. 1 v. Fredrickson,* 812 P.2d 723 (Colo.App. 1991).

■ In an unemployment proceeding, the hearing officer is required independently to assess the evidence entered at the hearing and reach his own conclusion as to the reason for claimant's separation from employment. The hearing officer is required to make his own conclusions concerning the probative value of the evidence, the credibility of the witnesses, and the resolution of conflicting testimony. *School District No. 1 v. Fredrickson, supra.*

■ Thus, "[whether] an employee's conduct should disqualify the employee from receiving unemployment compensation benefits is an issue quite distinct from the question of whether the employee was discharged in accordance with particular employer-generated guidelines." *Gonzales v. Industrial Commission,* 740 P.2d 999, 1002 (Colo.1987). Accordingly, a violation of an employer-generated guideline, policy, procedure, or rule by an employee is not *per se* determinative of the issues of whether an employee generally is entitled to benefits and of whether claimant specifically was "at fault" for his separation, but is only one factor to be considered in the totality of the circumstances surrounding the separation.

The employer in *Gonzales* had argued that when an employer establishes guidelines for determining when an employee's conduct requires discharge, a discharge pursuant to those guidelines prohibits any award of unemployment compensation benefits. In rejecting that argument, the supreme court concluded that the employer's automatic no-fault discharge policy was inconsistent with the statutory mandate that compensability be based on the "exercise of discretion" and "independently in each case under the guidelines established by the General Assembly." Thus, it concluded that the fact that claimant's discharge was in compliance with employer's discharge policy was not dispositive of the question of whether claimant was unemployed through no fault of his own. *Gonzales v. Industri-*

*al Commission, supra. See* § 8–73–108(5)(e).

In its adoption of this totality of the circumstances test to determine fault, the supreme court relied, in part, on the decision of this court in *Hospital Shared Services v. Industrial Commission, supra.* There employer had a three-step disciplinary policy—a verbal warning, a written warning, and discharge. The employee had been discharged only after the second violation. In its affirmance of an award of benefits, this court noted that the employer had deviated, without justification, from its stated policy. Thus, it concluded that the employer had been terminated through no fault of her own.

Here, it was undisputed that respondent did not follow the third step of its discipline procedure. Thus, in reliance on *Hospital Shared Services,* claimant argues that respondent's failure to follow its discipline policies without justification for its deviation, *ipso facto,* requires an award of benefits. We do not agree.

Contrary to claimant's assertion, *Hospital Shared Services* does not set forth any such bright line rule. To the contrary, as we read *Hospital Shared Services,* the discharge of the employee there after her second violation despite the three-step policy indicated that she had no warning or notice that commission of the second infraction would result in her discharge. Thus, the employer's violation of its own disciplinary policy was a factual circumstance relevant to a determination of whether the employee was at fault, that is, did she perform a volitional act or exercise some control over the circumstances resulting in the discharge. *See Zelingers v. Industrial Commission, supra* (employer's failure to inform employee that next absence from work would result in discharge deprived her of the opportunity to act volitionally in her separation from employment); *cf. Pabst v. Industrial Claim Appeals Office,* 833 P.2d 64 (Colo.App.1992) (no requirement that a claimant be explicitly warned that his job is in jeopardy if his performance does not improve in order to support a disqualification for failure to meet established job performance standards).

Here, any violation of respondent's discipline policy did not result in misinformation to claimant nor affect his ability to act volitionally with respect to his discharge. Based on the totality of the circumstances, the hearing officer found that, even though employer did not follow all the progressive disciplinary procedures prior to discharging claimant from employment, claimant was given adequate notice that his conduct had placed him at risk of losing his job and that employee, in essence, did not act reasonably by working on a personal project instead of the employer's work when he was aware of his deficient performance.

Therefore, he found that claimant acted volitionally in the circumstances that led to his separation from employment. These findings are supported by substantial, although sometimes conflicting, evidence and may not be disturbed. *Jones v. Industrial Commission, supra.* Further, the findings support the conclusion that claimant was responsible or "at fault" for his separation. We therefore find no error in the hearing officer's conclusion that claimant was responsible for his separation.

### B.

Citing *Continental Air Lines, Inc. v. Keenan, supra,* claimant suggests in his brief that under his contract of employment, he was entitled to rely on the three-step discipline procedure set forth in respondent's discipline manual and that, thus, he was not "at fault" for his discharge. *Continental Air Lines, Inc. v. Keenan, supra,* however, is not applicable here.

In the *Keenan* case, the supreme court set forth the doctrine that, in the area of wrongful discharge law, in certain circumstances, employees originally hired under contracts terminable at will may be able to enforce termination, disciplinary, or other procedures in an employees' manual or employer's administrative manual under either ordinary contract principles or the theory of promissory estoppel.

In contrast, the unemployment statutory scheme was developed to allow a hearing officer discretion to determine the reason for claimant's separation and whether claimant was at fault. *See Gonzales v. Industrial Commission, supra.* For the most part, it has been considered to be an organic statute, basically standing alone. Accordingly, this court and the supreme court consistently have refused to engraft federal unemployment case law or statutory requirements onto the state act. *See Industrial Commission v. Northwestern Mutual Life Insurance Co.,* 103 Colo. 550, 88 P.2d 560 (1939); *Brannan Sand & Gravel Co. v. Industrial Claim Appeals Office,* 762 P.2d 771 (Colo.App.1988); *Insul-lite Window & Door Manufacturing, Inc. v. Industrial Commission,* 723 P.2d 151 (Colo.App.1986); *see also School District No. 1 v. Fredrickson, supra* (hearing officer not bound by determination of any other agency, administrative body, or forum which is not required to make its decisions under the Employment Security Act).

Moreover, the purpose of the unemployment statute and case law has been to keep the law and procedures as streamlined as possible. *See Division of Employment & Training v. Hewlett,* 777 P.2d 704 (Colo. 1989). On the other hand, the scope of the civil wrongful discharge area of law as first established under the *Keenan* ruling is expanding. *See Martin Marietta Corp. v. Lorenz,* 823 P.2d 100 (Colo.1992); *Allabashi v. Lincoln National Sales Corp.,* 824 P.2d 1 (Colo.App.1991); *Tuttle v. ANR Freight System, Inc.,* 797 P.2d 825 (Colo. App.1990); *Cronk v. Intermountain Rural Electric Ass'n,* 765 P.2d 619 (Colo.App. 1988). To engraft its requirements onto the unemployment statute would unnecessarily encumber the unemployment statutory scheme.

Therefore, we conclude that principles concerning wrongful discharge set forth *Continental Air Lines, Inc. v. Keenan, supra,* and its progeny are not determinative of the entitlement and "fault" issues

in an unemployment compensation benefits case. *Cf. Gonzales v. Industrial Commission, supra.*

Accordingly, the order is affirmed.

NEY, J., and HODGES, Justice,* concur.