62 F.3d 1428
 130 Lab.Cas. P 57,972
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Clyde BACKLUND, William R. Castleman, Charles Freeney,
Dennis Gallegos, Paul A. Maez, Jr.; David L. Mourisse,
Donna L. Noska, David F. Parrent, Ronald J. Rupp, James A.
Schultz, William A. Schultz, Walter L. Sutton, Ismael D.
Vialpando, Plaintiffs-Appellants,
and
Conway P. BLEVINS and Darrel E. Land, Plaintiffs,
v.
THE GATES CORPORATION, The Gates Rubber Company,
Defendants-Appellees.
Clyde BACKLUND, Conway P. Blevins; William R. Castleman,
Charles Freeney, Dennis Gallegos, Darrel E. Land, Paul A.
Maez, Jr., David L. Mourisse, Donna L. Noska, David F.
Parrent, Ronald J. Rupp, James A. Schultz, William A.
Schultz, Walter L. Sutton, Ismael D. Vialpando, Plaintiffs-Appellants,
v.
THE GATES CORPORATION, The Gates Rubber Company, Defendants-Appellees.
 Nos. 94-1254, 94-1305.
 United States Court of Appeals, Tenth Circuit.
 Aug. 15, 1995.
 
 1
 Before MOORE and LOGAN, Circuit Judges, and DAUGHERTY, District Judge.[2]
 
 ORDER AND JUDGMENT[1]
 
 2
 Plaintiffs alleged their employer, The Gates Corporation and its wholly-owned subsidiary The Gates Rubber Co. (collectively Gates), breached employment contracts when it discharged them during a corporate restructuring.[3] The district court granted Gates' motion for summary judgment on each claim. On appeal plaintiffs argue that the district court erred (1) in granting judgment on the claims for breach of implied contract and promissory estoppel, and (2) in assessing costs against plaintiffs.
 
 
 3
 We review the entry of summary judgment de novo, applying the same standard used by the district court. Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir.1990) (citations omitted). Summary judgment is proper if "no genuine issue as to any material fact" remains for trial. Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). "[S]hould a non-moving party not make a sufficient showing on any essential element of his case, all other facts are rendered immaterial, and summary judgment is appropriate." Doheny v. Wexpro Co., 974 F.2d 130, 133 (10th Cir.1992).
 
 
 4
 Plaintiffs worked for Gates in its Denver battery and belt manufacturing division. Their employment applications all included an affidavit in which each acknowledged that if hired, their employment could be terminated at any time by either party. None were employed for a specified term and none had written contracts of employment. Recent employee handbooks stated that plaintiffs were at-will employees and that "[n]either this policy nor any other communication by any management representative, either written or oral, made at the time of hire or during the course of employment, [was] intended in any way to create an employment contract."[4] I Supp.App. 176, 178.
 
 
 5
 In 1987, Gates announced a three-year plan to relocate its battery and belt manufacturing operations from Denver. Gates also opened an outplacement service for the approximately 850 affected employees. Several months later D.E. Miller, President and Chief Operating Officer of Gates Corporation, released a memorandum which read as follows:
 
 
 6
 As all of you are aware, we are currently in the process of relocating our Energy Products operations from Denver. This is a difficult process which requires that we provide as smooth a transition as possible for our employees affected by the relocation, while continuing to meet the high service demands of our customers.
 
 
 7
 To ensure that we place as many displaced employees as possible, I am asking all of you as hiring managers to give priority consideration to employees from GEP for any openings that you may have.
 
 
 8
 While you may not find the candidate within this group who "exactly" meets the job requirements, the loyalty and wealth of experience represented by these employees is a valuable asset to Gates.
 
 
 9
 To assist in retaining these employees, I'm asking Personnel to notify hiring managers whenever displaced GEP employees meet some of the requirements for open positions. If you select one of these employees for the position, no posting of the job will be required.
 
 
 10
 For names and employment history of available GEP employees, please contact [ ] in Personnel.
 
 
 11
 As we approach the phasedown of Denver Manufacturing, we will want to give displaced employees from that area the same priority consideration.
 
 
 12
 One additional point. It is important that our people know about this procedure, and understand why a job may be filled by a former GEP employee without posting. Please take the time to visit with your employees and share this information.
 
 
 13
 I Supp.App. 198. A second memorandum from Miller followed in 1990 when jobs first were eliminated. It read as follows:
 
 
 14
 As all of you are aware, we are beginning the first major elimination of jobs related to the phase-down of Belt Manufacturing in Denver which was announced three years ago. This is a difficult process and requires cooperation from all of you to ensure a smooth and efficient transition.
 
 
 15
 In order to assist in placing as many displaced employees as possible, I am asking all of you, as hiring managers, to first consider displaced Denver Manufacturing employees for any openings that you may have.
 
 
 16
 To facilitate this process, Personnel will provide hiring managers with names of displaced employees who meet the stated job requirements for consideration before the job vacancies are posted. If you select one of the displaced employees, the job will not need to be posted.
 
 
 17
 Today with the increasingly competitive demands of a global marketplace, we must hire the best qualified applicants to assure the long-term viability of our Company. Many of our displaced employees have valuable experience. If these employees meet the stated requirements of your job opening, you should give serious consideration to hiring these individuals.
 
 
 18
 For names and employment history of available Denver Manufacturing employees please contact [ ] in Personnel.
 
 
 19
 Your cooperation in this effort is appreciated.
 
 
 20
 Id. at 199. Both memoranda were addressed to "All Managers of the Gates Corporation" in their capacity as "hiring managers." Although none of the plaintiffs were hiring managers, most of them obtained copies of or read the memoranda. All of the plaintiffs either accepted retirement or were terminated in 1990 or 1991. Plaintiffs assert that the Miller memoranda changed their employment status from at will to a contractual relationship.
 
 
 21
 "An employee who is hired in Colorado for an indefinite period of time is an 'at will employee,' whose employment may be terminated by either party without cause and without notice, and whose termination does not give rise to a cause of action." Continental Air Lines, Inc. v. Keenan, 731 P.2d 708, 711 (Colo.1987) (citations omitted). The presumption of at will employment, however, is rebuttable in at least two ways. The employee may establish the elements of an implied contract by showing that company policies or employment manuals constituted an offer of employment. Under this theory, the employee must give consideration for the contract in the form of continued employment. Id. at 713. Alternatively, the at-will employee may prevail under a promissory estoppel theory by showing that (1) the employer should have reasonably expected employees to view employment policies as a commitment from the employer to follow those practices, (2) the employee reasonably relied on those policies to his detriment, and (3) "that injustice can be avoided only by enforcement of the termination procedures." Vasey v. Martin Marietta Corp., 29 F.3d 1460, 1466 (10th Cir.1994) (citing Keenan, 731 P.2d at 712) (applying Colorado law). Under either theory, plaintiffs must make a showing of an offer of employment or promise upon which plaintiffs could reasonably rely. Keenan, 731 P.2d at 711-12. Plaintiffs concede their state law claims are based upon the Miller memoranda and not an employee handbook. Appellants' Opening Brief at 3.
 
 
 22
 Plaintiffs assert the Miller memoranda promised that they would receive "first" or "priority" consideration for employment at Gates. We have read the Miller memoranda in the context of the record, which includes plaintiffs' employment application affidavits and excerpts from the employee handbooks, and agree with the district court that they did not create an implied contract of employment. See Therrien v. United Airlines, Inc., 670 F.Supp. 1517, 1523 (D.Colo.1987) (noting inherent conflict of implied contract and promissory estoppel claims and signed statements by employees that their employment was terminable at will). The representations in the Miller memoranda are too intangible to be quantifiable promises giving rise to implied contracts. The memoranda establish a departure from Gates' standard job posting routine to allow displaced employees to be selected for open positions. Miller encouraged hiring managers to discuss the memoranda in an apparent effort to foster understanding why some job vacancies might not be publicized in the usual fashion. As a consequence the memoranda were widely distributed, discussed and posted, which may have contributed to the perception by employees of a promise or commitment; but the memoranda did not contain a promise or other commitment upon which employees could reasonably rely, regardless of their widespread availability.
 
 
 23
 Similarly, plaintiffs' promissory estoppel argument fails because the memoranda do not contain language that Gates reasonably should have expected employees to consider as a commitment to place them in other jobs at Gates. Further, the record contains no evidence of detrimental reliance by plaintiffs to support the estoppel claim. See II Supp.App. 223-24 (Backlund), 265, 272 (Freeney), 303-04, 311 (Land), 350-51 (Mourisse), 372-74 (Parrent), 385-86 (Rupp), 393 (J. Schultz).
 
 
 24
 We agree with the district court that as a matter of law the Miller memoranda were "not sufficiently definite to be legally enforceable promises" for purposes of establishing either an implied contract or promissory estoppel. App. 17. Dupree v. United Parcel Service, 956 F.2d 219, 222-23 (10th Cir.1992) (Although whether purported offer is sufficiently definite to constitute a promise is generally a factual inquiry for jury, when "alleged promises are nothing more than vague assurances ..., the issue can be decided as a matter of law."); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986) (the issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law").
 
 
 25
 We next consider plaintiffs' assertion that the district court erred in assessing costs against them. We review the assessment of costs for abuse of discretion. Moe v. Avions Marcel Dassault-Breguet Aviation, 727 F.2d 917, 936 (10th Cir.), cert. denied, 469 U.S. 853 (1984). Fed.R.Civ.P. 54(d)(1) contemplates assessing costs in favor of the prevailing party. Costs include expenses for depositions "necessarily obtained." 28 U.S.C.1920(2).
 
 
 26
 Although the district court order denying plaintiffs' objections to the cost award is brief, it specifically found that the "depositions were reasonable and necessary to determine what claims the plaintiffs were making individually." App. 55. Each of the fifteen plaintiffs filed federal age discrimination claims as well as wrongful termination charges. Gates' counsel deposed each plaintiff in order to discover the factual bases for those claims. Portions of each plaintiff's deposition were used to support Gates' summary judgment motion. We conclude the district court did not abuse its discretion in determining that these depositions were reasonably necessary to the litigation. Furr v. AT & T Technologies, 824 F.2d 1537, 1550-51 (10th Cir.1987) (presumption favors awarding costs).
 
 
 27
 AFFIRMED.
 
 
 
 [1]
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order filed November 29, 1993. 151 F.R.D. 470
 
 
 [2]
 The Honorable Frederick A. Daugherty, Senior United States District Judge, United States District Court for the Western, Eastern and Northern Districts of Oklahoma, sitting by designation
 
 
 [3]
 Plaintiffs also alleged that Gates violated the Age Discrimination in Employment Act, 29 U.S.C. 621-634, but they do not appeal the district court's dismissal of their age discrimination claims
 
 
 [4]
 We deny plaintiffs' motion to supplement the record because our holding is not dependent upon whether the disclaimer in the employee handbook is conspicuous. Plaintiffs do not rely on the handbook for their contract claims, and plaintiffs signed statements to the effect they were at-will employees. See Therrien v. United Air Lines, 670 F.Supp. 1517, 1520 (D.Colo.1987)