83 F.3d 431
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Roger A. DICKENS, Plaintiff-Appellant,
v.
EQUIFAX SERVICES, INC., a Georgia corporation, Defendant-Appellee.
 No. 95-1217.
 United States Court of Appeals, Tenth Circuit.
 April 22, 1996.
 
 ORDER AND JUDGMENT[1]
 Before KELLY and BARRETT, Circuit Judges, and BROWN,** Senior District Judge.
 BARRETT, Senior Circuit Judge.
 
 
 1
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R.App. P. 34(a); 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.
 
 
 2
 Plaintiff Roger A. Dickens appeals the district court's order granting summary judgment in favor of his former employer, defendant Equifax Services, Inc., on his claims under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. 621-634, the Colorado Employment Practices Act, Colo.Rev.Stat. 24-34-401, and for promissory estoppel.
 
 
 3
 Mr. Dickens was employed by Equifax for approximately thirty-two years from 1960 until January 1993. Until January 1992, Mr. Dickens was employed in Equifax's Phoenix, Arizona office. In 1991, he was approached regarding his interest in a position in the Denver, Colorado office as an assistant manager, the same position he held in Phoenix. Mr. Dickens alleges that in order to secure his interest in the Denver position, he was promised a promotion, a salary increase, participation in a bonus program, and a better outlook for his remaining years with Equifax. Mr. Dickens accepted the Denver position and moved to Denver in January 1992. Equifax paid all of his moving expenses and the commission on the sale of his Phoenix home.
 
 
 4
 At the time Mr. Dickens was offered the Denver position, Equifax was undergoing reorganization and downsizing which had started in 1990, and continued until June 1992. In June 1992, a new executive in charge of field operations was appointed, resulting in another restructuring. As a consequence, Denver was divided according to product lines with a nonresident manager in charge of each product nationwide. Mr. Dickens' position as assistant manager of the Denver office was eliminated, and he became the assistant manager of the special investigations unit in Denver under the supervision of the Seattle, Washington regional manager. His work load dropped substantially, as there did not appear to be a need for his position in the Denver office.
 
 
 5
 Mr. Dickens was terminated on January 5, 1993, his fifty-fifth birthday. This also was the date his pension vested under Equifax's retirement policy. Prior to his termination, he was offered a position as a supervisor, allegedly in order to give him the opportunity of remaining with the company and improving his retirement position; because a supervisor position would have been a demotion, he refused.
 
 
 6
 Following Mr. Dickens' termination, a new chief executive officer for Equifax was appointed, resulting in another new management structure whereby employees in a department would choose the person they wanted to head the department, with the choice being subject to management approval. The head of the department was known as the "city leader." In March 1993, two months after Mr. Dickens' termination, the Denver office chose Michael Lynn as city leader. Mr. Lynn held this position until November 1993, when he left the company.
 
 
 7
 In his complaint, Mr. Dickens alleged that Equifax discriminated against him because of his age by placing Mr. Lynn, a younger person, in the position of city leader. He also claims damages based on his reliance on the alleged promises of Equifax when he accepted the Denver position. The district court granted summary judgment to Equifax on all claims. Mr. Dickens appeals, and we affirm.
 
 I. Standard of Review
 
 8
 We review the district court's grant of summary judgment de novo. Jones v. Unisys Corp., 54 F.3d 624, 627 (10th Cir.1995). Summary judgment is appropriate if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). When applying this standard, we examine the factual record and reasonable inferences therefrom in the light most favorable to the nonmoving party. Wolf v. Prudential Ins. Co., 50 F.3d 793, 796 (10th Cir.1995). The nonmoving party must produce sufficient evidence to withstand summary judgment and to require submission of the case to a jury. Jones, 54 F.3d at 628. "We affirm the district court's decision to grant summary judgment if the record contains any basis to do so." Id.
 
 II. Age Discrimination Claim
 
 9
 ADEA plaintiffs may establish discrimination indirectly through the three-part standard set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), and its progeny. MacDonald v. Eastern Wyo. Mental Health Ctr., 941 F.2d 1115, 1119 (10th Cir.1991). Pursuant to McDonnell Douglas, the plaintiff bears the burden of establishing a prima facie case of discrimination. Id. (citing Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981)). In order to establish a prima facie case of age discrimination, a plaintiff must show that "(1) he was within the protected age group; (2) he was doing satisfactory work; (3) he was discharged despite the adequacy of this work; and (4) he was replaced by a younger person." Marx v. Schnuck Markets, Inc., 76 F.3d 324, 327 (10th Cir.1996). The discharged employee is not always replaced in a case where the adverse employment decision is as a result of a reduction in force. Therefore, the fourth element of the prima facie case has been modified to require the plaintiff to "produc[e] evidence, circumstantial or direct, from which a factfinder might reasonably conclude that the employer intended to discriminate in reaching the decision at issue." Ingels v. Thiokol Corp., 42 F.3d 616, 621 (10th Cir.1994)(further quotation omitted).
 
 
 10
 Once a plaintiff meets this burden, "the employer must offer a facially nondiscriminatory reason for its employment decision." Randle v. City of Aurora, 69 F.3d 441, 451 (10th Cir.1995). "At the summary judgment stage, it then becomes the plaintiff's burden to show that there is a genuine dispute of material fact as to whether the employer's proffered reason for the challenged action is pretextual--i.e. unworthy of belief." Id. If the plaintiff presents such evidence, the case is not proper for summary judgment, and the motion must be denied. Id.
 
 
 11
 Here, it was undisputed that Mr. Dickens was within the group protected by the statute, and that his work was satisfactory at the time of his termination. The district court determined that the fourth element of the prima facie case, whether Mr. Dickens was replaced by a younger person, was a disputed fact. The court concluded, however, that the role of assistant manager was distinct from that of city leader, and therefore, Mr. Lynn, who became city leader seven months after the assistant manager's position had been eliminated and two months after Mr. Dickens was terminated, did not replace Mr. Dickens. The court stated that even though the city leader position incorporated many of the duties formerly performed by the assistant manager, "no reasonable trier of fact could find that Equifax would endure two corporate reorganizations simply to terminate Dickens because of his age," and that Mr. Dickens had presented no evidence that "he would have been selected by his peers as the city leader." Appellant's App. at 326. The court therefore held that Mr. Dickens failed to meet his summary judgment burden as to the fourth element of his prima facie case.
 
 
 12
 On appeal, Mr. Dickens argues that the district court improperly resolved a disputed issue of material fact as to whether Mr. Dickens had been replaced by a younger individual. Whether the district court erred in so holding, however, is a point we need not decide because the district court, recognizing that some conflict on this point existed and fulfilling its responsibility to construe disputed facts in favor of the nonmoving party, presumed that Mr. Dickens had established his prima facie case, and continued the analysis.
 
 
 13
 Assuming that Mr. Dickens established a prima facie case, we next look at whether Equifax articulated a legitimate, nondiscriminatory reason for terminating Mr. Dickens. See MacDonald, 941 F.2d at 1119 (the establishment of a prima facie case creates a presumption of unlawful discrimination that requires the defendant employer to come forward with legitimate, nondiscriminatory reasons for the adverse employment decision). Equifax proffered that Mr. Dickens termination was due to restructuring, the need for downsizing, and poor financial performance. Equifax contends that the assistant manager position Mr. Dickens held in Denver was eliminated in June 1992, and not refilled. Equifax further asserts that at this time, Mr. Dickens' job was excess, but he was kept on in order to allow his pension to vest.
 
 
 14
 The district court concluded that Equifax had proffered legitimate nondiscriminatory reasons for Mr. Dickens' termination. There appears to be no dispute regarding the legitimacy of the downsizing. The court found that Equifax had closed twenty-eight regional offices and one hundred-ninety-six district offices during 1990 and 1991. At the time of Mr. Dickens transfer from Phoenix to Denver, production in the Phoenix office was down, and following the restructuring in June 1992, Mr. Dickens' work load was greatly reduced.
 
 
 15
 If the employer offers evidence of a legitimate nondiscriminatory reason for the challenged decision, "the presumption of discrimination established by the prima facie showing simply drops out of the picture." Ingels, 42 F.3d at 621 (quotation omitted). At the summary judgment stage, the plaintiff must then show direct evidence of age discrimination or that the defendant's legitimate nondiscriminatory reason is a pretext for discrimination. Id. at 621-22. "A plaintiff demonstrates pretext by showing either that a discriminatory reason more likely motivated the employer or ... that the employer's proffered explanation is unworthy of credence." Marx, 76 F.3d at 327-28 (quoting Rea v. Martin Marietta Corp., 29 F.3d 1450, 1455 (10th Cir.1994))(further quotation omitted).
 
 
 16
 Here, Mr. Dickens has failed to show any direct evidence of age discrimination. In an effort to show pretext, Mr. Dickens first argues that his December 1992 termination letter, which states that his termination is part of a "downsizing" due to "poor financial performance," indicates a December 1992 reorganization never occurred, and that his position should have been unaffected by the June 1992 reorganization which did occur. On the contrary, the June 1992 reorganization eliminated Mr. Dickens' Denver position. Equifax asserts that the reason he was not terminated until December 1992 was in order to allow his pension to vest.
 
 
 17
 Next, Mr. Dickens contends that the district court did not consider the report of a certified public accountant, Edward J. Meier, who, following a review of financial documents of Equifax, Inc. for the years 1991 through 1994, opined that the company was in a "strong financial position." Appellant's App. at 291. Mr. Dickens asserts that this report belies Equifax's stated reason, "poor financial performance," given for terminating him. See id. at 35.
 
 
 18
 In response, Equifax asserts that Mr. Meier's report concerns the financial condition of Equifax, Inc., a holding company, and does not reflect the financial condition of defendant Equifax Services, Inc., one of the separately incorporated subsidiaries of Equifax, Inc. Also during a deposition, Mr. Meier admitted that he had not reviewed any financial statements of Equifax Services, Inc. Id. at 318.
 
 
 19
 Mr. Dickens contends that the district court did not consider his allegation that there was a "strong possibility" that his termination was part of an ongoing policy of age discrimination. Appellant's Br. at 14. Although he alludes to several hearsay statements, including a statement regarding an alleged company preference for young, aggressive individuals,[2] he proffered no evidence that Equifax had engaged in age discriminatory practices in the past, or that others were terminated because of age. See Cone v. Longmont United Hosp. Ass'n, 14 F.3d 526, 530 (10th Cir.1994)("[A]llegations alone will not defeat summary judgment); Jones, 54 F.3d at 632 (stray remarks made by people not in decision-making positions do not establish an intent to discriminate).
 
 
 20
 Mr. Dickens failed to show, by competent evidence, that the reasons given for his termination were unworthy of belief. See Cone, 14 F.3d at 530. Interpreting Mr. Dickens evidence in the most favorable light, we conclude that Mr. Dickens could not persuade a reasonable jury that Equifax had discriminated against him on the basis of his age. See Jones, 54 F.3d at 632. Summary judgment was therefore appropriate on his ADEA claim
 
 III. Promissory Estoppel
 
 21
 Finally, Mr. Dickens argues that the district court erred in granting summary judgment on his promissory estoppel claim. Mr. Dickens asserts that he relied, to his detriment, on certain promises made by his supervisor prior to his relocation from Phoenix to Denver. He contends that Frank Hinds, his supervisor in Phoenix, promised that (1) he would continue to have a career with Equifax until age sixty-five, (2) he would be promoted if he moved to Denver, (3) he would receive annual pay increases and annual bonuses, (4) the amount of his bonus would compensate for his loss of his wife's income, (5) he would be a manager in Denver, (6) he would be taken care of by the company, and (7) he would remain employed by the company. The court concluded that, as a matter of law, no reasonable jury could find that Mr. Dickens reasonably relied on these alleged promises regarding his future with the company if he took the Denver position, or that these statements even rose to the level of promises.
 
 
 22
 Under Colorado law, "[a]n employee who is hired ... for an indefinite period of time is an 'at will employee,' whose employment may be terminated by either party without cause and without notice, and whose termination does not give rise to a cause of action." Continental Air Lines, Inc. v. Keenan, 731 P.2d 708, 711 (Colo.1987). An at-will employee may prevail under a theory of promissory estoppel by showing that (1) the employer should have expected the employee to view employment policies as a commitment from the employer to follow those practices, (2) the employee reasonably relied on those policies to his detriment, and (3) injustice can be avoided only by enforcement of the policies.[3] Vasey v. Martin Marietta Corp., 29 F.3d 1460, 1466 (10th Cir.1994)(applying Colorado law); Continental Air Lines, Inc., 731 P.2d at 712. A plaintiff must show the existence of a promise upon which he could reasonably rely. Id. at 711-12.
 
 
 23
 Although Mr. Dickens' arguments on appeal are not the picture of clarity, it appears that he is contending that Mr. Hinds' statements were binding on Equifax. He asserts that, in reliance on Mr. Hinds' statements regarding what Mr. Dickens' employment situation would be in Denver, he gave up his position in Phoenix, sold his home, his wife quit her job, and he moved to Denver. Mr. Dickens argues that Colorado law as set forth in Cronk v. Intermountain Rural Elec. Ass'n, 765 P.2d 619 (Colo.Ct.App.1988), cert. denied (Colo. Nov. 28, 1988), precludes the grant of summary judgment in a case where a supervisor makes representations as to future events. Mr. Dickens oversimplifies and misunderstands the holding in Cronk.
 
 
 24
 In Cronk, the plaintiff, a public utility employee, sought a transfer from a management to a nonmanagement position because he could no longer support the alleged illegal policies of his superior. The plaintiff claimed that his immediate supervisor promised him that he could request the transfer without retaliation. He was fired just prior to the transfer for unsatisfactory performance. Id. at 621.
 
 
 25
 Under Colorado law, a public policy exception to the general rule regarding terminable-at-will employees protects an employee who was discharged for exercising an enacted right or duty. See Farmer v. Central Bancorporation, Inc., 761 P.2d 220, 221 (Colo.Ct.App.1988), cert. denied (Colo. Sept. 6, 1988). Because disputed issues of fact existed as to whether the plaintiff in Cronk was discharged for exercising an enacted right or duty, and also as to whether the employer's employment manual created an employment contract binding the employer to the manual's terms, the court held that summary judgment was improper. 765 P.2d at 622-23. Such is not the situation here, and therefore, as the district court correctly determined, Cronk is distinguishable.
 
 
 26
 In conclusion, we agree with the district court that Mr. Hinds' statements were not sufficiently definite to be legally enforceable promises for purposes of establishing promissory estoppel. See Continental Air Lines, Inc., 731 P.2d 708, 712 (plaintiff must make sufficient preliminary factual showing to overcome presumption of at-will employment). They were little more than vague assurances or unsupported predictions, and as such, were not statements upon which Mr. Dickens could reasonably rely. See id. Therefore, the district court was correct in granting summary judgment to Equifax on Mr. Dickens' promissory estoppel claim.
 
 
 27
 The judgment of the United States District Court for the District of Colorado granting summary judgment to Equifax is AFFIRMED.
 
 
 
 [1]
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3
 
 
 **
 Honorable Wesley E. Brown, Senior District Judge, United States District Court for the District of Kansas, sitting by designation
 
 
 [2]
 We note that on appeal, Mr. Dickens failed to direct us to where in the record these alleged remarks appear. This court, therefore, is unable to ascertain the nature or context of these statements. See S.E.C. v. Thomas, 965 F.2d 825, 827 (10th Cir.1992)(in the absence of reference to the record, this court will not "sift through" the record to find support for a party's arguments)
 
 
 [3]
 In his complaint, Mr. Dickens asserted that Equifax had wrongfully terminated his employment in derogation of its own personnel manual. The district court determined that Mr. Dickens had failed to set forth any provision of the Equifax employment manual which guaranteed length of employment, procedures for termination, provisions for salary, salary increases, bonuses, or benefits. Mr. Dickens appears to abandon this claim on appeal