The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
October 3, 2024

## 2024COA108

**No. 23CA1030, Norton v. Ruebel — Attorneys and Clients — Retaining Liens — Other Property to Which Lien Attaches — Papers in Attorney's Possession**

A division of the court of appeals interprets section 13-93-115, C.R.S. 2024, which grants an attorney a retaining lien on a nonpaying client's papers that have come into the attorney's "possession in the course of his or her professional employment" and "upon money due to his or her client in the hands of the adverse party in an action or proceeding in which the attorney was employed." The division holds that an attorney's release of certain, but not all, of the documents covered by a retaining lien does not result in a waiver of the entire lien. The division also holds that the public policy grounds for not enforcing a retaining lien noted in federal case law and Colorado Bar Association Ethics Committee

Formal Opinion 82 are not inconsistent with the retaining lien statute.

The division reverses the district court's grant of summary judgment to the defendant attorney and remands the case for reconsideration of the plaintiffs' requests for files that the attorney contends are covered by a retaining lien.

Court of Appeals No. 23CA1030
Adams County District Court No. 21CV31338
Honorable Teri L. Vasquez, Judge

Michelle Norton and Brandon Thompson,

Plaintiffs-Appellants,

v.

Jeffrey Clay Ruebel, Esq. and Ruebel & Quillen, LLC, a Colorado limited
liability company,

Defendants-Appellees.

JUDGMENT REVERSED AND CASE
REMANDED WITH DIRECTIONS

Division VI
Opinion by JUDGE LIPINSKY
Freyre and Schutz, JJ., concur

Announced October 3, 2024

Preeo Silverman Green & Egle, P.C., Eldon E. Silverman, Centennial, Colorado;
Burg Simpson Eldredge Hersh & Jardine, P.C., D. Dean Batchelder,
Englewood, Colorado, for Plaintiffs-Appellants

McConnell Van Pelt, LLC, Michael T. McConnell, Kellsey A. Hansen, Denver,
Colorado, for Defendants-Appellees

¶ 1     Attorneys are generally entitled to receive payment for their services.  Abraham Lincoln, a legendary litigator as well as one of our country's greatest presidents, acknowledged that there is nothing crass or dishonorable in an attorney's efforts to receive payment for services rendered: "The matter of fees is important, . . . far beyond the mere question of bread and butter involved. Properly attended to, fuller justice is done to both lawyer and client."  Harry E. Pratt, *Personal Finances of Abraham Lincoln*, at 25 (1943), https://perma.cc/KW8Q.

¶ 2     But payment of an attorney's fees is not always "[p]roperly attended to."  *Id.*  For this reason, the Colorado General Assembly enacted two statutes that authorize lawyers to place liens on a nonpaying client's property, files, and funds, sections 13-93-114 and -115, C.R.S. 2024.  This case concerns the latter statute, which grants a lawyer a retaining lien on "any papers of his or her client that have come into his or her possession in the course of his or her professional employment" and "upon money due to his or her client in the hands of the adverse party in an action or proceeding in which the attorney was employed."  § 13-93-115.

¶ 3     Few published cases have interpreted the Colorado retaining lien statute, however.

¶ 4     In this case, we explore various issues relating to retaining liens and, among other holdings, decide that the release of certain, but not all, of the documents covered by such a lien does not result in a waiver of the entire lien.  In addition, we provide guidance to the district court in determining the enforceability of the retaining lien that is the principal subject of this appeal.

¶ 5     Plaintiffs, Michelle Norton and Brandon Thompson (jointly, the Norton parties), appeal the district court's order granting summary judgment in favor of defendants, Jeffrey Clay Ruebel, Esq., and Ruebel & Quillen, LLC, a Colorado limited liability company engaged in the practice of law (jointly, Ruebel).  In addition to challenging the grant of summary judgment to Ruebel, the Norton parties argue that the court erred by denying their requests for production of Ruebel's files (the subject files) regarding One Stop Construction and Landscapes, Inc.  Ruebel contends that he had the right to withhold production of the subject files to the Norton parties because he had placed a retaining lien on them.

¶ 6     We reverse the grant of summary judgment to Ruebel and remand for further proceedings consistent with this opinion.

## I. Background and Procedural History

¶ 7     Although the Norton parties pleaded detailed facts regarding several related transactions, we set forth here only those allegations relevant to our analysis.

¶ 8     The Norton parties purchased stock in One Stop, a corporation that Ruebel represented and that Jesse Alfaro owned. The Norton parties subsequently became the controlling shareholders, officers, and directors of One Stop. One Stop defaulted on a $2.5 million line of credit from Bank of Colorado, which the Norton parties and Alfaro had guaranteed. One Stop and the guarantors entered into a forbearance agreement that, among other provisions, increased the interest rate on the amount due to Bank of Colorado.

¶ 9     Counsel for Bank of Colorado subsequently informed Ruebel that One Stop was in default of the line of credit. The attorney asked Ruebel which borrowers and guarantors he represented. Ruebel informed counsel for Bank of Colorado that he represented One Stop, Alfaro, and the Norton parties, and he negotiated on their behalf an addendum to the forbearance agreement.

¶ 10    Pursuant to the addendum, an entity known as SALMAC LLC and Robert McAllister purchased the assets of One Stop in exchange for a $2.6 million promissory note payable to One Stop. The note was endorsed to Bank of Colorado. SALMAC and McAllister agreed to pay $900,000 to Bank of Colorado in monthly installments and endorsed the note secondarily to OSC Holdings, LLC, which would receive SALMAC and McAllister's monthly payments after Bank of Colorado had been paid in full.

¶ 11    After SALMAC and McAllister stopped making payments on the note, Bank of Colorado filed a lawsuit seeking replevin and money judgments against, among other defendants, One Stop, OSC Holdings, and Alfaro. The Norton parties were not parties to Bank of Colorado's lawsuit.

¶ 12    In that lawsuit, Bank of Colorado obtained a money judgment against One Stop (as well as against certain of the other defendants) in the amount of $912,213.82. According to the Norton parties, after Bank of Colorado took steps to enforce its judgment, One Stop was left with no assets and was dissolved.

¶ 13    The Norton parties, in their individual capacities, brought a legal malpractice action against Ruebel, asserting negligence and

breach of fiduciary duty claims. In their complaint, the Norton parties asserted, as relevant here, that

- Ruebel had acted as their attorney;

- in response to the Norton parties' inquiries, Ruebel misrepresented One Stop's financial condition;

- Ruebel failed to protect the Norton parties' interests;

- Ruebel represented both Alfaro as seller and the Norton parties as buyers in connection with the Norton parties' purchase of stock in One Stop; and

- the Norton parties lost nearly their entire investment in One Stop as a consequence of Ruebel's misconduct.

¶ 14 The Norton parties sought a judgment in the amount of approximately $1.4 million — representing the sum they allegedly lost through their investment in One Stop.

¶ 15 During the litigation, the Norton parties requested that Ruebel produce the subject files. Ruebel refused to do so. In a letter from Ruebel's counsel to counsel for the Norton parties, Ruebel asserted a retaining lien against the subject files under section 13-93-115 on the grounds that "One Stop owes [Ruebel] approximately $100,000 in unpaid legal fees." Notably, Ruebel's counsel stated in the letter

5

that the Norton parties did not have an attorney-client relationship with Ruebel but, rather, were "constituents" (i.e., officers and directors) of One Stop, Ruebel's client. Ruebel's counsel did not say in the letter that the Norton parties owed Ruebel any attorney fees.

¶ 16 The Norton parties filed a notice of discovery dispute in which they moved for a determination of the effect of the retaining lien on their request for the subject files. The Norton parties argued that Ruebel "waived any claim to a retaining lien" in August 2020 when, at Michelle Norton's request, Ruebel provided her with a portion of the subject files — "289 emails with voluminous attachments covering a [six-month period] during pivotal periods of joint representation" (the 2020 documents) — without claiming that the 2020 documents were subject to a retaining lien. The Norton parties also argued that Ruebel should "otherwise be prohibited from asserting the lien" as a "sword" to "frustrate the discovery process."

¶ 17 At a hearing on the discovery dispute, the Norton parties also argued that, even in the absence of a waiver, the court should not enforce Ruebel's retaining lien because they and One Stop were financially unable to pay Ruebel's unpaid fees. The Norton parties

requested an evidentiary hearing to address the factual basis for their asserted inability to pay the outstanding fees.

¶ 18    Ruebel responded that he had not waived the retaining lien when he provided the 2020 documents to Michelle Norton because he disclosed those documents to her in her capacity as his "corporate client's officer[] during the course of representation" before the fee dispute arose and that the Norton parties' "sword" argument failed because the court never found that Ruebel had engaged in any misconduct.

¶ 19    At the conclusion of the hearing, the court found "there [wa]s an appropriate and valid retaining lien on the files of One Stop held by [Ruebel]"; that the lien had "not been waived or lost based on any of the arguments asserted by [the Norton parties]"; and that, if Ruebel would not produce the subject files, "then no part of that file w[ould] be permitted usable by either party in this case, either in pursuit or defense of their claims."  The court also denied the Norton parties' request for an evidentiary hearing.

¶ 20    The Norton parties later filed a second notice of discovery dispute regarding their request for production of the subject files, in which they argued that "two recent developments provide[d]

7

grounds for an order requiring" Ruebel to produce the subject files. The Norton parties argued that, even if Ruebel had a valid retaining lien at one time, he "waived it by designating [Jeffrey Clay Ruebel] as an expert for trial" and by "disclosing a document from the file," thus opening the door to production of the subject files to the Norton parties. Ruebel responded that he was not relying on the subject files for Jeffrey Clay Ruebel's expert testimony and that Ruebel had received the document to which the Norton parties referred only after the inception of the case. The court conducted another hearing on the retaining lien issue and again found in favor of Ruebel. Thus, the Norton parties were unable to obtain the subject files.

¶ 21 Ruebel filed a motion for summary judgment, arguing that the Norton parties' claims failed as a matter of law because they could not establish that Ruebel's conduct caused them damages. The court granted the motion and entered summary judgment against the Norton parties.

## II. Analysis

### A. The Retaining Lien

¶ 22   We first address the Norton parties' arguments regarding Ruebel's retaining lien and the subject files.

¶ 23   The Norton parties contend that the court erred by "concluding that Ruebel's assertion of a retaining lien against One Stop preempts all discovery" regarding the subject files. The Norton parties ask us to reverse the court's orders denying their requests for production of the subject files and to remand for further proceedings.

¶ 24   We hold that the court did not apply the correct legal standard when analyzing whether Ruebel's retaining lien precluded production of the subject files to the Norton parties. Because documents contained in the subject files may be relevant to the issue of causation (as well as to the Norton parties' cross-examination of Jeffrey Clay Ruebel in his capacity as an expert), we reverse the grant of summary judgment to Ruebel, as we discuss further *infra* Part II.B, and remand for further consideration of the Norton parties' requests for the subject files, consistent with this opinion.

### 1. Standard of Review

¶ 25    We review the court's interpretation and application of the retaining lien statute and case law de novo. *See Gallegos v. Colo. Ground Water Comm'n*, 147 P.3d 20, 28 (Colo. 2006). We review discovery rulings — including decisions about production of files subject to a retaining lien — for an abuse of discretion. *See In re People in Interest of J.P.*, 2023 CO 57, ¶ 17, 538 P.3d 337, 343; *Jenkins v. Dist. Ct.*, 676 P.2d 1201, 1203 (Colo. 1984). A court abuses its discretion if its decision is manifestly arbitrary, unreasonable, or unfair or when it misapplies or misconstrues the law. *J.P.*, ¶ 17, 538 P.3d at 343.

### 2. The Law Governing Retaining Liens

¶ 26    An attorney has a statutory right to retain "any papers" of his client that come into his possession in the course of his professional employment until compensation is paid. § 13-93-115. This retaining lien attaches once the attorney "has completed compensable work." *People ex rel. MacFarlane v. Harthun*, 581 P.2d 716, 718 (Colo. 1978). It allows the attorney to retain the client's "papers, books, documents, securities, and money" until "the general balance due him for legal services is paid, whether such

services grew out of the special matters then in his hands, or other legal matters." *Collins v. Thuringer*, 21 P.2d 709, 710 (Colo. 1933). The purpose of the retaining lien is to aid the attorney in recovering the fees and costs due him for the services performed for the client. *See In re Att'y G.*, 2013 CO 27, ¶ 16, 302 P.3d 248, 251; *accord Pomerantz v. Schandler*, 704 F.2d 681, 683 (2d Cir. 1983) ("The purpose of the lien is to assist the attorney in preventing a client from refusing or failing to pay charges justly due.").

¶ 27 Although section 13-93-115 does not address circumstances under which a court will not enforce a retaining lien, the Tenth Circuit Court of Appeals and the Ethics Committee of the Colorado Bar Association noted that courts will not enforce retaining liens for reasons "grounded on public policy." *Jenkins v. Weinshienk*, 670 F.2d 915, 919 (10th Cir. 1982); Colo. Bar Ass'n Ethics Comm., Formal Op. 82 (1989) (hereinafter, CBA Formal Op. 82) ("A lawyer's right to assert a retaining lien is not absolute. The right may be limited by legal and ethical considerations."). We are not bound by these authorities. *See Perez v. By the Rockies, LLC*, 2023 COA 109, ¶ 14, 543 P.3d 1054, 1056 (*cert. granted* Aug. 19, 2024) (Although a state court can consider federal decisions "as persuasive authority,

we are not bound by them when interpreting state statutes.");

*Gafcon, Inc. v. Ponsor & Assocs.*, 120 Cal. Rptr. 2d 392, 411 (Ct. App. 2002) (holding that courts are not bound by a state ethics opinion). Nonetheless, *Weinshienk* and CBA Formal Op. 82 are persuasive authorities that we may consider. Ruebel does not cite any authority, from any jurisdiction, indicating that courts rigidly apply retaining lien statutes, such as section 13-93-115, when application of the statute would result in an unjust or inequitable outcome.

¶ 28    Contrary to Ruebel's argument, we perceive no inconsistency between the language of section 13-93-115 and a court's decision not to enforce a retaining lien to avoid this type of outcome. The statute merely addresses how a retaining lien is created and the papers and moneys covered by such a lien:

> An attorney has a lien for a general balance of compensation upon any papers of his or her client that have come into his or her possession in the course of his or her professional employment and upon money due to his or her client in the hands of the adverse party in an action or proceeding in which the attorney was employed from the time of giving notice of the lien to that party.

§ 13-93-115. It does not speak to the circumstances under which a retaining lien may, or may not, be enforced and does not suggest that a retaining lien is absolute. *See Antero Treatment LLC v. Veolia Water Techs., Inc.*, 2023 CO 59, ¶ 16, 546 P.3d 1140, 1146 (explaining that, to determine whether a statute and a court rule are inconsistent, the court must first "determine whether the rule and statute irreconcilably conflict").

¶ 29 Accordingly, we agree with the Tenth Circuit that, after a court determines that an attorney has a retaining lien, the court must also determine whether assertion of the lien is "in such conflict with important principles that it must be relinquished when balanced against considerations of public policy." *Weinshienk*, 670 F.2d at 919; *cf. Jenkins*, 676 P.2d at 1205 (weighing the attorney's interest in his retaining lien against other interests, such as "the highly material nature of the subject of the lien, the implications of a lawyer's duties toward his client, and the importance of promoting the truth-seeking functions of discovery rules").

¶ 30 For example, as CBA Formal Opinion 82 notes, a court will not enforce an attorney's retaining lien if (1) there is no legal basis for asserting the lien; (2) the client who owes the fees furnishes

adequate security or posts an adequate bond; (3) the client's papers are essential to preserve an important personal liberty interest of the client; or (4) the client is financially unable to post a bond or pay the attorney. *See* CBA Formal Op. 82; *Weinshienk*, 670 F.2d at 920. The Ethics Committee opined that, while a "lawyer may ethically assert a retaining lien on a client's papers . . . when the client is financially able to pay outstanding fees, but fails or refuses to do so," a lawyer may *not* assert a retaining lien if "the client is financially *unable* to post a bond or pay the fees, unless the client's inability to pay or post bond is a result of fraud or gross imposition by the client." CBA Formal Op. 82 (emphasis added); *see also* ABA Comm. on Ethics & Pro. Resp., Informal Op. 1461 (1980) (hereinafter, ABA Informal Op. 1461), *withdrawn,* ABA Comm. on Ethics & Pro. Resp., Informal Op. 86-1520 (1986).

¶ 31 But even more fundamental questions are presented when an attorney seeks to enforce a retaining lien: Is the party seeking the documents covered by the lien a client, a former client, or a third party? Relatedly, does the requesting party owe fees to the attorney? Thus, in deciding whether to enforce a retaining lien, a court should first determine the relationship between the party

seeking the documents and the attorney and whether the party against whom the lien is asserted owes any fees to the attorney.

¶ 32     Different considerations apply in determining whether a client or a third party is entitled to documents covered by a retaining lien. *See, e.g.*, *Weinshienk*, 670 F.2d at 920 ("If the only interests at stake . . . were those of the attorney and his . . . former clients, the case would present no problem; the lien would be allowed to stand. But also involved is [the third party's] interest . . . in a speedy resolution of his claims."); *Shaffer v. Charleston Area Med. Ctr., Inc.*, 485 S.E.2d 12, 16 (W. Va. 1997) (noting that an "attorney's lien for professional services may not be enforced in equity against a stranger" to the matter in which the lawyer's services were rendered).

¶ 33     While the broad wording of section 13-93-115 suggests that a retaining lien generally follows the files, and not the client, under certain circumstances, it would be inequitable to deny a third party access to the papers covered by the retaining lien. *Cf. Weinshienk*, 670 F.2d at 920 ("If [the third party] needs something in the [attorney's] file to prove his case [against the debtor client], he can get it by discovery or subpoena notwithstanding the attorney's

15

retaining lien."); *In re Garcia,* 69 B.R. 522, 525 (Bankr. E.D. Pa.) (comparing situations where courts have allowed attorneys to assert retaining liens against third parties with situations where it would be inequitable to do so), *aff'd,* 76 B.R. 68 (E.D. Pa. 1987), *aff'd,* 838 F.2d 460 (3d Cir. 1987) (unpublished table decision); CBA Formal Op. 82 ("[A]n attorney who has asserted a lien may be compelled to produce documents to the client's adversary, since it would be inequitable to deny a litigant access to relevant and perhaps essential proof, merely because the opposing party had failed to pay attorney's fees.").

¶ 34    In addition, we agree with the Norton parties that an "attorney's ability to assert his lien can be waived or lost." *MacFarlane,* 581 P.2d at 718. Waiver is "the intentional relinquishment of a known right." *In re Marriage of Kann,* 2017 COA 94, ¶ 55, 488 P.3d 245, 254. An attorney expressly waives a retaining lien by, for example, giving the former client "unconditional assurances that the documents would be returned." *People v. Brown,* 840 P.2d 1085, 1088 (Colo. 1992). A waiver may also "be implied from a party's conduct if the conduct is free of ambiguity and clearly manifests the intent not to assert the right."

16

*Kann*, ¶ 55, 488 P.3d at 254. Further, an attorney may implicitly waive a retaining lien by surrendering possession of files covered by the lien because the lien "depends upon possession and attaches only to papers actually in [the attorney's] possession." *Reynolds v. Warner*, 258 N.W. 462, 464 (Neb. 1935) (applying Colorado law).

### 3. The Court Did Not Consider All Relevant Factors in Deciding that the Norton Parties Were Not Entitled to the Subject Files

¶ 35 The Norton parties contend that the court erred by concluding that Ruebel's retaining lien "barred all discovery of [the subject files], that the lien was effective even though neither One Stop nor [the Norton parties] could pay the lien amount, and that Ruebel did not waive his right to the lien when he produced documents from the file without mention of the lien."

¶ 36 We first note that the court did not determine the threshold issue of whether the Norton parties were clients or former clients of Ruebel who owed attorney fees to him. At oral argument, counsel for the Norton parties suggested there is an ongoing dispute as to whether they were Ruebel's clients, while counsel for Ruebel said that the Norton parties became Ruebel's clients at the time of the

17

negotiations regarding the forbearance agreement following One Stop's default on the Bank of Colorado line of credit.

¶ 37 But even if the Norton parties were Ruebel's clients at one time, we cannot determine from the record whether they are liable for any of Ruebel's unpaid fees or whether One Stop alone is liable for those fees. Similarly, we cannot tell from the record whether any of Ruebel's clients (or former clients) in this case are financially unable to pay Ruebel's outstanding attorney fees or post a bond or whether their inability to pay or post a bond is a result of fraud or gross imposition. Without knowing these key facts, we cannot adjudicate whether the Norton parties are entitled to production of the subject files, even if Ruebel placed a retaining lien on them.

¶ 38 Second, we dispense with the Norton parties' waiver argument. They provide no authority suggesting that a waiver of a retaining lien as to some papers covered by the lien results in a waiver of the lien as to the remaining papers.

¶ 39 Because a retaining lien "depends upon possession," *Reynolds*, 258 N.W. at 464, we hold that an attorney does not waive a retaining lien in its entirety by releasing a portion of the files covered by the lien to a client or a third party. Thus, Ruebel did not

18

waive his retaining lien on those portions of the subject files that he did not produce to Michelle Norton — even if Ruebel waived the retaining lien as to the 2020 documents by providing them to her.

¶ 40    Additionally, Ruebel's designation of Jeffrey Clay Ruebel as a non-retained expert did not amount to conduct "free of ambiguity and clearly manifest[ing]" Ruebel's intent not to assert his right to retain the subject files. *Kann*, ¶ 55, 488 P.3d at 254. For this reason, Ruebel did not waive his right to assert a retaining lien on the subject files by designating Jeffrey Clay Ruebel as an expert.

¶ 41    In sum, we agree with the Norton parties that the court misinterpreted the law when it analyzed the scope and applicability of Ruebel's retaining lien. Specifically, the court construed the following language in *Weinshienk* too narrowly: "An exception is also recognized when the client is financially unable to post a bond or pay — in such cases the client's failure is not deliberate *and requiring the client to pay may hinder its ability to secure other representation.*" *Weinshienk*, 670 F.2d at 920 (emphasis added). Because the court found that the Norton parties did not make an "adequate representation" that "the inability to post a bond may hinder [their] ability to secure other representation," the court

concluded that none of the exceptions discussed in *Weinshienk* applied.

¶ 42    We do not read this dictum in *Weinshienk* to suggest that a client's inability to pay can defeat a retaining lien only when it hinders the client's ability to secure other representation.  Neither of the authorities that *Weinshienk* cites for the inability-to-pay exception involved a situation where the lien impeded an impecunious client from securing substitute representation.  *See generally Hernandez v. Nierenberg*, 179 N.Y.S.2d 322, 324-25 (Sup. Ct. 1958); ABA Informal Op. 1461.  Rather, the *Weinshienk* language illustrates but one non-exhaustive example of prejudice to a client that could result from the assertion of a retaining lien if the client's inability to pay the outstanding fees is not deliberate.

¶ 43    Our reading of *Weinshienk* is consistent with CBA Formal Op. 82, which does not mention the client's ability to secure other representation when describing the inability-to-pay exception.  Rather, it says only that an attorney may not ethically assert a retaining lien when "the client is financially unable to post a bond or pay, unless the client's inability to pay or post bond is a result of

fraud or gross imposition by the client." CBA Formal Op. 82 (quoting *Weinshienk*, 670 F.2d at 920).

¶ 44 Because the court misinterpreted *Weinshienk*, the court did not fully consider or weigh the competing interests, ethical considerations, and considerations of public policy when it concluded that no exception to the retaining lien applied. *See Weinshienk*, 670 F.2d at 919; *Jenkins*, 676 P.2d at 1205; CBA Formal Op. 82. Those considerations include whether the retaining lien is unenforceable — even if the Norton parties owe attorney fees to Ruebel — to avoid undue prejudice to the Norton parties in their litigation against Ruebel. *See Marsh, Day & Calhoun v. Solomon*, 529 A.2d 702, 706 (Conn. 1987) ("[B]arring unusual circumstances, *such as prejudice to the rights of a client,* an attorney is under no obligation to release the files of a client unless there has been payment, the furnishing of adequate security or, of course, a mutually acceptable arrangement between the parties.") (emphasis added); CBA Formal Op. 82 (noting that a withdrawing attorney should protect the welfare of the client by endeavoring to minimize the possibility of harm to the client); *see also Weinshienk*, 670 F.2d at 920 (explaining that inconvenience to the former clients "is the

essence — the power and the bite — of the attorney's retaining lien" and that requiring a retaining lien to give way "because it hampers the clients' defense of their suit . . . would emasculate the retaining lien as it applies to general balances owed attorneys"). There is a material distinction between an action that materially prejudices a former client and one that merely causes inconvenience or hampers the former client's defense.

¶ 45    The factual findings and inquiries pertinent to this analysis include

- whether the Norton parties, in their individual capacities (the capacities in which they filed this action), were clients of Ruebel for purposes of the retaining lien analysis;

- whether the Norton parties, or only One Stop, owe Ruebel the attorney fees that are the subject of the retaining lien;

- whether Ruebel's assertion of the retaining lien against the Norton parties is necessary to protect Ruebel's interest in receiving payment for the outstanding legal fees;

22

- the value of Ruebel's interest in the lien and whether whichever clients or former clients of Ruebel owe the subject attorney fees are able to pay them or to post a bond that would adequately secure Ruebel's interest in payment;

- whether enforcing the retaining lien against the Norton parties would materially prejudice their ability to litigate against Ruebel in this action; and

- whether doing so may materially prejudice the Norton parties' ability to cross-examine Jeffrey Clay Ruebel in his capacity as an expert witness.

*See Jenkins*, 676 P.2d at 1204 (requiring production of documents in the attorney's file notwithstanding a retaining lien covering the documents in an action involving an attorney fees dispute).

¶ 46    While Ruebel bears the burden of establishing the existence of the retaining lien, *see In re Marriage of Mitchell*, 55 P.3d 183, 185 (Colo. App. 2002), the Norton parties bear the burden of showing that assertion of the lien is "in such conflict with important principles that it must be relinquished when balanced against considerations of public policy." *Weinshienk*, 670 F.2d at 919; *cf.*

23

*Pomerantz*, 704 F.2d at 683 (requiring the client to make a clear showing of "his inability to pay the legal fees or post a reasonable bond").

¶ 47    Thus, on remand, the court must reconsider the Norton parties' requests for the subject files, consistent with this opinion. The court may, in its discretion, order supplemental briefing, conduct an evidentiary hearing, or take such other steps that would aid the court in determining whether Ruebel's retaining lien bars production of the subject files to the Norton parties.

### B.    The Grant of Summary Judgment to Ruebel

#### 1.    Standard of Review and the Law Governing Grants of Summary Judgment

¶ 48    We review a grant of summary judgment de novo. *Rocky Mountain Planned Parenthood, Inc. v. Wagner*, 2020 CO 51, ¶ 42, 467 P.3d 287, 295.  Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  C.R.C.P. 56(c).

¶ 49     "The burden of establishing the nonexistence of a genuine issue of material fact is on the moving party."  *Cont'l Air Lines, Inc. v. Keenan*, 731 P.2d 708, 712 (Colo. 1987).  "In a case where a party moves for summary judgment on an issue on which [it] would not bear the burden of persuasion at trial, [its] initial burden of production may be satisfied by showing the court that there is an absence of evidence in the record to support the nonmoving party's case."  *Id.*  "Once the moving party has met this initial burden of production, the burden shifts to the nonmoving party to establish that there is a triable issue of fact."  *Id.* at 713.  "If the nonmoving party cannot muster sufficient evidence to make out a triable issue of fact on his claim, a trial would be useless and the moving party is entitled to summary judgment as a matter of law."  *Id.*

¶ 50     "In considering whether summary judgment is appropriate, a court grants the nonmoving party the benefit of all favorable inferences that may reasonably be drawn from the undisputed facts and resolves all doubts against the moving party."  *Rocky Mountain Planned Parenthood, Inc.*, ¶ 20, 467 P.3d at 291.

### 2. We Reverse the Grant of Summary Judgment to Ruebel Because We Are Remanding the Case for a Redetermination of Whether the Norton Parties Are Entitled to the Subject Files

¶ 51 Because we are remanding the case for further proceedings on whether Ruebel is entitled to withhold the subject files from the Norton parties, we cannot say there are no disputed issues of material fact regarding whether Ruebel's actions caused the damages that the Norton parties seek to recover in this action. If, after conducting the analysis of Ruebel's retaining lien outlined above, the court concludes that the Norton parties are entitled to obtain the subject files, the Norton parties will be able to scour the subject files for documents that may support their causation theory or any of the other elements of their claims against Ruebel. Any such documents may be relevant to the merit of the Norton parties' claims.

¶ 52 Alternatively, the court may determine that, even after undertaking the proper analysis, the Norton parties are not entitled to any of the subject files. And even if the court decides that the Norton parties are entitled to the subject files, no documents in those files may support the Norton parties' claims. If so, Ruebel

26

could refile his motion for summary judgment or such other dispositive motion he believes is appropriate.  We express no opinion on the merits of any such motion.

### III.   Disposition

¶ 53      We reverse the grant of summary judgment to Ruebel and remand to the court for reconsideration of the Norton parties' requests for the subject files, consistent with this opinion.

JUDGE FREYRE and JUDGE SCHUTZ concur.