24CA1289 Baja v Lancaster Manor 05-29-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 24CA1289
City and County of Denver District Court No. 23CV31729
Honorable Jon J. Olafson, Judge

Allison Baja,

Plaintiff-Appellant,

v.

Lancaster Manor, LLC,

Defendant-Appellee.

JUDGMENT AFFIRMED

Division VII
Opinion by JUDGE LIPINSKY
Pawar and Hawthorne*, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced May 29, 2025

The Fields Group LLC, Jerry Douglas Fields, Conifer, Colorado; Strickland and Kendall, LLC, William Strickland, Montgomery, Alabama, for Plaintiff-Appellant

Montgomery|Amatuzio, Christopher R. Reeves, Zachary Gardner, Denver, Colorado, for Defendant-Appellee

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2024.

¶ 1     Plaintiff, Allison Baja, appeals the district court's entry of partial summary judgment in favor of defendant, Lancaster Manor, LLC, on Baja's negligent infliction of emotional distress claim. We affirm.

## I.     Background

¶ 2     Baja leased an apartment from Lancaster. One day after notifying Lancaster of a mouse infestation in the apartment, Baja texted Lancaster's property manager to "officially" report "a pretty extensive mice problem."

¶ 3     Baja sued Lancaster for breach of contract, negligent infliction of emotional distress, and breach of the implied warranty of habitability because Lancaster allegedly did not address the mouse infestation within a reasonable time.

¶ 4     Lancaster filed a motion for partial summary judgment on Baja's negligent infliction of emotional distress claim and another claim that is not the subject of this appeal. In her response to the motion, Baja cited, among other exhibits, text messages between her and an agent of Lancaster; the transcript of her own deposition; and portions of the deposition transcript of Martin Duman, a principal of Lancaster. (We do not consider the portions of the

Duman deposition transcript or the medical records Baja cited in the response because those documents do not appear in the record. *See In re Marriage of McSoud*, 131 P.3d 1208, 1211, 1223 (Colo. App. 2006).) Baja did not tender an affidavit or expert report to support the response.

¶ 5 The court granted summary judgment to Lancaster on Baja's negligent infliction of emotional distress claim.

¶ 6 Baja proceeded to trial on her breach of the implied warranty of habitability claim. (She voluntarily dismissed her breach of contract claim before trial.) The jury found in Baja's favor and awarded her $10,000 in damages against Lancaster. (The judgment entered on that claim is not an issue in this appeal.) After Baja prevailed at trial on her implied warranty of habitability claim, she appealed the court's grant of summary judgment to Lancaster on her negligent infliction of emotional distress claim.

## II. Analysis

### A. Standard of Review

¶ 7 "We review a grant of summary judgment de novo." *Norton v. Ruebel*, 2024 COA 108, ¶ 48, 562 P.3d 96, 105. "Summary judgment is appropriate when 'there is no genuine issue as to any

2

material fact and . . . the moving party is entitled to a judgment as a matter of law.'" *Thomas v. Childhelp, Inc.*, 2024 COA 16, ¶ 13, 548 P.3d 1152, 1155 (quoting C.R.C.P. 56(c)). "The moving party has the burden of establishing the lack of a triable factual issue, and all doubts as to the existence of such an issue must be resolved against the moving party." *Id.* (quoting *Churchey v. Adolph Coors Co.*, 759 P.2d 1336, 1340 (Colo. 1988)). When "summary judgment is sought regarding an issue on which the moving party would not bear the burden of persuasion at trial, the moving party can meet its initial burden of production by showing that there is an absence of evidence in the record to support the nonmoving party's case." *D.R. Horton, Inc.–Denver v. D & S Landscaping, LLC*, 215 P.3d 1163, 1166-67 (Colo. App. 2008).

¶ 8      "Once the moving party has met [its] initial burden of production, the burden shifts to the nonmoving party to establish that there is a triable issue of fact." *Cont'l Air Lines, Inc. v. Keenan*, 731 P.2d 708, 713 (Colo. 1987). "The nonmoving party may not rely on 'mere allegations or denials' of the moving party's pleadings but must identify specific facts, through affidavits or otherwise, that show there is a genuine triable issue sufficient to allow a reasonable

jury to return a verdict in its favor." *City & Cnty. of Denver v. Monaghan Farms, Inc.*, 2023 COA 60, ¶ 21, 536 P.3d 825, 829 (quoting *A-1 Auto Repair & Detail, Inc. v. Bilunas-Hardy*, 93 P.3d 598, 603 (Colo. App. 2004)). "If the nonmoving party cannot muster sufficient evidence to make out a triable issue of fact on [her] claim, a trial would be useless and the moving party is entitled to summary judgment as a matter of law." *Cont'l Air Lines*, 731 P.2d at 713.

¶ 9     "To avoid summary judgment, the evidence presented in opposition to such a motion must . . . be sufficient to demonstrate that a reasonable jury could return a verdict for the [nonmoving] party." *Andersen v. Lindenbaum*, 160 P.3d 237, 239 (Colo. 2007). "Mere conclusory statements are not sufficient to raise genuine factual issues." *Olson v. State Farm Mut. Auto. Ins. Co.*, 174 P.3d 849, 858 (Colo. App. 2007); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (The moving party is entitled to summary judgment if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.").

## B. Baja Failed to Establish a Triable Issue as to Whether Lancaster Created an Unreasonable Risk of Physical Harm

¶ 10 To establish a negligent infliction of emotional distress claim,

> a plaintiff must show that the defendant's negligence created an unreasonable risk of physical harm and caused the plaintiff to be put in fear for [her] own safety, that this fear had physical consequences or resulted in long-continued emotional disturbance, and that the plaintiff's fear was the cause of the damages sought.

*Draper v. DeFrenchi-Gordineer*, 282 P.3d 489, 496-97 (Colo. App. 2011). Thus, a claim for negligent infliction of emotional distress fails if the plaintiff cannot establish the "unreasonable risk of physical harm" element. *Id.*; *see also Slovek v. Bd. of Cnty. Comm'rs*, 697 P.2d 781, 783 (Colo. App. 1984) (holding that the plaintiff was not entitled to damages for emotional distress because he did not allege he was "subjected to an unreasonable risk of bodily harm because of the negligence of another," even though he could "recover damages for annoyance and discomfort" under his other claims), *aff'd*, 723 P.2d 1309 (Colo. 1986).

¶ 11 Like the court, we focus on whether Baja "set forth specific facts showing that there [was] a genuine issue for trial," C.R.C.P. 56(e) — whether Lancaster's alleged negligence created "an

5

unreasonable risk of physical harm," *Draper*, 282 P.3d at 496. (For purposes of this analysis, we presume, but do not decide, that Lancaster was negligent.)

¶ 12     In support of her argument that there was a triable factual issue as to whether the mouse infestation resulted in an unreasonable risk of physical harm, Baja pointed to

- the "numerous express correspondence" in which she informed Lancaster's agent that "she was in fear for her own health and safety";

- other correspondence "wherein [Baja] convey[ed] the severity of the infestation and her concerns," which Lancaster's agent "expressly affirm[ed]," and in which the agent agreed "with her concerns and the severity of the problem";

- Baja's deposition testimony, "wherein [she] testified that the 'toxicity level of the feces especially in the quantities that were in [her] personal space' was so severe as to implicate 'severe' health concerns";

- the principals of Lancaster's acknowledgment that "the infestation needed to be remedied immediately as it affected [Baja]'s health and safety"; and

- Lancaster's retention of a cleaning service "whose duties involved removing 'everything that was considered a health risk to [Baja] and [her] pet and discard[ing] belongings the[y] deemed too badly damaged or too toxic to be salvageable."

¶ 13    In its order granting Lancaster's summary judgment motion, the court found that "the unreasonableness of the risks associated with mice in a residential dwelling [wa]s not . . . readily evident."  It noted there was "no evidence, outside of [Baja]'s own testimony, that th[e] type of mouse, th[e] infestation, and the circumstances surrounding the alleged infestation created an *unreasonable* risk of physical harm."  The court added that, "[w]ith only reliance upon . . . lay and conclusory statements about the alleged severity of the infestation," Baja failed to demonstrate that the mouse infestation "created an unreasonable risk of physical harm."  The court concluded that, "[b]ecause [Baja] [wa]s unable to demonstrate record evidence that an unreasonable risk of physical harm was

created by defendant's negligence, summary judgment [wa]s appropriate."

¶ 14 Baja's appeal hinges on the distinction between a risk of physical harm and an *unreasonable* risk of physical harm, which the supreme court analyzed in *City & County of Denver v. Dennis*, 2018 CO 37, ¶ 23, 418 P.3d 489, 497. In that case, the court interpreted "unreasonable risk" in the context of determining the existence of a "dangerous condition" for purposes of the Colorado Governmental Immunity Act (the CGIA). *Id.* at ¶ 23, 418 P.3d at 497 (quoting § 24-10-103(1.3), C.R.S. 2024). Section 24-10-103(1.3) of the CGIA, defines a "dangerous condition," in relevant part, as one that "constitutes an unreasonable risk to the health or safety of the public."

¶ 15 The court explained that, while a risk is "the chance of injury, damage, or loss," *Dennis*, ¶ 23, 418 P.3d at 497 (quoting Black's Law Dictionary 1524 (10th ed. 2014)), an *unreasonable* risk is "a chance of injury, damage, or loss *which exceed[s] the bounds of reason*," *id.* (emphases added). The court concluded that a deteriorated road without "potholes or sinkholes" or "features which would force a driver to make an emergency maneuver, or any other

8

road characteristics such as a raised pavement lip that could damage a vehicle and lead to an accident" was not "unreasonably risky." *Id.* at ¶ 26, 418 P.3d at 498; *see Galef v. Univ. of Colo.*, 2022 COA 91, ¶¶ 42, 47, 520 P.3d 184, 193 (holding that the presence of imperceptibly wet, slippery stairs in a public building poses an unreasonable risk to the health and safety of the public, unlike the risk of a "mere 'tripping hazard'" such as "an uneven sidewalk" (quoting *Maphis v. City of Boulder*, 2022 CO 10, ¶ 24, 504 P.3d 287, 292)).

¶ 16   Applying *Dennis*'s definition of "unreasonable risk," Baja needed to set forth specific facts showing there was a genuine issue regarding whether the risk of physical harm resulting from mice in the apartment "exceeded the bounds of reason." *Dennis*, ¶ 23, 418 P.3d at 497.

¶ 17   None of the evidence that Baja provided in support of the response, however, established a triable issue on the unreasonable risk of physical harm element of her negligent infliction of emotional distress claim. In Baja's deposition transcript, she testified that she looked "into [the] kind of safety issues" associated with a mouse infestation, and, "in what [she] recognize[d] as probably a limited

9

access of looking at things online, the toxicity level of the feces especially in the quantities that were in [her] personal space [were] so severe and those health implications [were] so severe" that she began "wrestl[ing] with [a] frantic fear of how to try to salvage [her] belongings . . . coupled with [an] understanding" that "trying to take things out" of the apartment would disrupt the mice's "nests and potentially mice would scatter into other parts" of the apartment.

¶ 18    In her opening brief, Baja argues that the evidence of her exposure to mouse feces; the property damage resulting from "nesting, urine, and feces;" her "sleepless nights and general terror;" her displacement from the apartment; and her decision to seek therapy "show[] that a jury could find whether [Baja] was subjected to an unreasonable risk of bodily harm."

¶ 19    In support of this argument, Baja cites *Lingo v. Pryer*, No. 16CV30895, 2017 WL 7071693 (Colo. Dist. Ct., Adams Cnty. Feb. 7, 2017) (unpublished order).  (Baja does not refer to a specific court filing in *Lingo*, but our review of *Lingo*'s docket suggests that she relies on the February 7 order in that case.)

¶ 20    *Lingo* does not support Baja's argument.  First, district court orders do not bind us.  *See Sidman v. Sidman*, 2016 COA 44, ¶ 10,

411 P.3d 167, 169.  Second, the facts in *Lingo* were materially different from those in this case.  In *Lingo*, the court denied the defendant motorcyclist's motion for summary judgment on the plaintiff truck driver's negligent infliction of emotional distress claim based on its determination that a motorcyclist's effort to "sneak around" another vehicle in a one-lane construction zone presents an unreasonable risk of physical harm.  2017 WL 7071693, at *1.

¶ 21    In contrast, Baja failed to set forth specific facts showing that the mouse infestation created a risk of physical harm, much less an unreasonable risk.  Baja's deposition testimony that the infestation caused her to experience "tremendous property damage," "sleepless nights[,] and general terror"; to vacate the apartment; and to seek therapy fell short of establishing that a reasonable jury could find that Lancaster's alleged negligence resulted in an unreasonable risk of physical harm.  *See Andersen,* 160 P.3d at 239.

¶ 22    Moreover, Baja does not persuade us with her argument premised on section 38-12-505(4)(i), C.R.S. 2024, which establishes a rebuttable presumption that "[a]n infestation of rodents" at residential premises materially interferes with a tenant's life, health, or safety for purposes of warranty of habitability claims.  Baja does

11

not point to any authority indicating that we can engraft language from the warranty of habitability statute onto a negligence claim. In any event, the statute does not say that a rodent infestation creates an unreasonable risk of physical harm or that a plaintiff who proves a warranty of habitability claim based on such an infestation is automatically entitled to damages for negligent infliction of emotional distress. Thus, claims for breach of the warranty of habitability and negligent infliction of emotional distress rest on different elements.

¶ 23 For these reasons, we conclude that, even after granting Baja the benefit of all favorable inferences that a jury may reasonably draw from the undisputed facts and resolving all doubts against Lancaster, *see Norton,* ¶ 50, 562 P.3d at 106, Baja nonetheless failed to set forth specific facts showing the existence of a genuine triable issue on her negligent infliction of emotional distress claim — specifically, that the presence of mice in the apartment created a risk of physical harm that "exceeded the bounds of reason," *Dennis,* ¶ 23, 418 P.3d at 497.

¶ 24 In light of our conclusion, we need not address Baja's argument that the toxicity of rodents is "well within the lay

12

competence of a juror," and, therefore, she could prove an unreasonable risk of physical harm without expert testimony.

### III.   Disposition

¶ 25    The judgment is affirmed.

JUDGE PAWAR and JUDGE HAWTHORNE concur.