JUDGE J. JONES,
dissenting.
¶ 39 I respectfully dissent. In my view; the hearing officer’s findings, are, supported by the record and .the hearing officer correctly applied the law. Consequently, I..would reverse the Panel’s order overturning the hearing officer’s decision.'
I. Background
' ¶ 40 The hearing officer made the following relevant findings. Claimant worked for employer as a public services manager. In 2013, employer asked claimant to complete an organizational capacity report because she had requested additional, staff and employer needed data to determine- if she. was effectively using existing staff. Also, claimant’s department did not have a clear, or well-organized data collection report. Claimant had “failed to maintain accurate departmental operational capacity benchmarks,” had not consistently tracked employee schedules for staffing purposes, had demonstrated resistance or a lack of initiative when asked to produce specifics concerning her department’s production, and had shown favoritism to certain employees in her department.
¶ 41 Claimant presented employer with- a report that essentially amounted to a “data *768 dump” lacking cohesion and analysis. Employer was disappointed with the report. In September 2014, employer gave claimant a performance improvement plan (PIP) that required her to prepare a written operational capacity report and to verbally present the report on October 7, 2014. Employer had previously counseled claimant and placed her on two other PIPs for failing to manage her staff effectively and act professionally.
¶ 42 Employer provided claimant with guidelines on how to prepare the report and encouraged her, if necessary, to get assistance from her supervisor. The supervisor later made herself available and gave claimant ideas on how to organize and compile information for the report. Employer informed claimant that failure to complete the presentation could lead to additional disciplinary action up to and including termination of employment.
¶ 43 On October 2, claimant’s supervisor asked claimant about the October 7 presentation. Claimant said that she probably would not be ready to give it. The supervisor reminded claimant that employer had set ¿side time for the presentation and asked claimant to indicate if there was anything the supervisor could do to help her. Claimant gave.no such indication.
¶ 44 On October 7, claimant' called in sick because she had anxiety. She came in to work the next day, but she -did not provide employer with a copy of the report or ask about when she needed to present the report. In the afternoon, she left to purchase Halloween candy and supplies for a library event, although her duties did not include shopping for the event. That conduct displeased employer’s director, who informed claimant’s supervisor that he wanted to discharge claimant.
¶ 45 Claimant was absent from work on October 9 because of anxiety. Several days later she submitted a note from a nurse practitioner indicating that she was suffering from acute stress disorder and depression; employer granted claimant’s request for leave. Claimant had begun suffering from stress and depression in 2013 after employer began issuing her corrective actions and PIPs based on her deficient job performance.
¶ 46 On October 14, employer telephoned claimant to see if she had a copy of the report. Employer’s director had decided that if claimant had completed the report-as required, he might not discharge her. Upon learning that claimant had not completed the report, employer discharged her.
¶ 47 At the hearing, claimant testified that employer targeted her, issued the PIPs, and discharged her based on age discrimination. The hearing officer did not find this testimony persuasive, however, finding instead that employer discharged claimant for nondiscriminatory and nonretaliatory reasons.
¶ 48 The hearing officer found that claimant failed to meet established job performance standards by (1) not presenting or preparing the report; (2) not seeking assistance from her supervisor to complete the report when the supervisor reached out to her; and (3) not attempting to reschedule the presentation of the report and, instead, deciding to shop for Halloween items. In short, “[t]his employer terminated the claimant because the claimant did not present or prepare a report on organizational capacity for the administrative team.”
¶ 49 Though claimant argued that she was mentally unable to perform her job, and therefore riot at fault, see § 8-73-108(4)(j), C.R.S. 2015 (a claimant is entitled to benefits if she is “physically or mentally unable to perform the work”), the hearing officer found that she was at fault because her anxiety and depression-were caused by the employer’s action taken in response to her poor job performance and her poor job performance justified the employer’s actions (specifically, the PIPs and criticism).
¶ 50 Based on these findings, the hearing officer determined that claimant was at fault for the separation and that disqualification was warranted under section 8-73-108(5)(é)(XX).
¶ 51 On review, the Panel purported to accept the hearing officer’s evidentiary findings because they were not contrary to the weight of the evidence. However, the Panel concluded -that the cause of claimant’s anxiety and depression were “remote from the *769 proximate cause of her separation.” It further concluded that there was “scant” evidence to support the hearing officer’s finding that claimant engaged in any volitional conduct that caused her anxiety and depression and resulting inability to perform her job duties. Accordingly, the Panel awarded claimant benefits under section 8-73-108(4)(j). The majority agrees with the Panel’s conclusions, but I do not. .
II. Discussion
A. Applicable Legal Standards
¶ 52 Whether a claimant is entitled to unemployment benefits depends upon the reason for the claimant’s job separation. See Debalco Enters., Inc. v. Indus. Claim Appeals Office, 32 P.3d 621, 623 (Colo.App.2001). That reason is a matter to be resolved by the hearing officer as the trier of fact. See Eckart v. Indus. Claim Appeals Office, 775 P.2d 97, 99 (Colo.App.1989).
¶ 53 We may not disturb a hearing officer’s evidentiary findings if they are supported by substantial evidence or reasonable inferences drawn from that evidence. Yotes, Inc. v. Indus. Claim Appeals Office, 2013 COA 124, ¶ 10, 310 P.3d 288; Tilley v. Indus. Claim Appeals Office, 924 P.2d 1173, 1177 (Colo.App.1996). Substantial evidence means evidence that is probative, credible, and competent, and of a character that warrants a reasonable belief in the existence of facts supporting a particular finding, without regard to the existence of contradictory testimony or contrary inferences. Rathburn v. Indus. Comm’n, 39 Colo.App. 433, 435, 566 P.2d 372, 373 (1977).
¶ 54 “It is the hearing officer’s responsibility, as trier of fact, to weigh the evidence, assess credibility, resolve conflicts in the evidence, and determine the inferences to be drawn therefrom.” Hoskins v. Indus. Claim Appeals Office, 2014 COA 47, ¶ 10, 327 P.3d 356. Neither we nor the Panel may reweigh the evidence or clisturb the hearing officer’s credibility determinations. See id.
¶ 55 The Panel is bound by the hearing officer’s findings of evidentiary fact if they are not contrary to the weight of the evidence, which is a more deferential standard of review than the substantial evidence standard we apply on judicial review in other contexts. See Samaritan Inst. v. Prince-Walker, 883 P.2d 3, 9-10 (Colo.1994).
¶ 56 Wé may set aside the Panel’s decision if, as pertinent here, the findings of fact do not support the Panel’s decision or the Panel’s decision is erroneous as a matter of law. See § 8-74-107(6)(c)-(d), C.R.S. 2015.
B. Analysis
. ¶ 57 Contrary to the majority (and the Panel), I conclude that the evidentiary' findings and the record as a whole support the hearing officer’s decision to disqualify claimant from receiving benefits based on her failure to meet job performance standards.
1. The Findings Support Application of Section 8-73^108(5)(e)(XX)
¶ ■ 58 Substantial evidence in the record supports the. hearing officer’s findings that (1) claimant was discharged for failing to prepare and present the report; (2) preparing and presenting the report were within claimant’s known job duties; and (3) claimant failed to meet established'job performance standards by not preparing or presenting the report, not seeking assistance from employer, and not attempting to reschedule the presentation. Consequently, these findings áre binding on review. See Yotes, ¶ 10; Tilley, 924 P.2d at 1177.
¶ 59 find these findings are also sufficient to satisfy section 8-73-108(5)(e)(XX). All that is necessary to establish a disqualification under that subsection is a showing that a claimant did not do the job for which she was hired and knew what was expected of her. See Richards v. Winter Park Recreational Ass’n, 919 P.2d 933, 935 (Colo.App.1996); Pabst v. Indus. Claim Appeals Office, 833 P.2d 64, 65 (Colo.App.1992).
2. The Findings Support the Hearing Officer’s Fault Determination
¶ 60 Even if evidentiary findings .support application of a disqualifying subsection of the statute, a claimant may still be entitled to benefits if the totality of the circumstances establishes that the job separation occurred *770 through no fault of the claimant. See Velo v. Emp’t Sols. Pers., 988 P.2d 1139, 1142 (Colo.App.1998); Keil v. Indus. Claim Appeals Office, 847 P.2d 235, 237 (Colo.App.1993).
¶ 61 As the majority notes, in the unemployment- context, “fault” is a term of art used as a factor to determine whether the claimant or the employer is responsible overall for the job separation. See Cole v. Indus. Claim Appeals Office, 964 P.2d 617, 618 (Colo.App.1998). Fault requires a volitional act or the exercise of some control or choice in the circumstances leading to the separation such that the claimant can be said to be responsible for it. See id,; see also Richards, 919 P.2d at 934. Fault is an ultimate legal conclusion to be based on the established findings of evidentiary fact. See Cole, 964 P.2d at 618-19.
¶ 62 In this case, the hearing officer concluded that claimant was at fault for being discharged. As discussed, she based that conclusion on the evidentiary findings that claimant’s anxiety, depression, and resulting inability to complete the report were caused by having received the PIPs and job performance criticism which, in turn, resulted from claimant’s prior volitional conduct of not performing her job duties.
¶ 63 The Panel rejected this critical finding concerning the fault.issue and the underlying reason for the job separation, concluding that there was only “scant” evidence to support it. Contrary to the Panel’s conclusion, however, substantial record evidence, including primarily claimant’s own testimony, supports the hearing officer’s finding that claimant’s anxiéty and depression directly resulted from her past job performance deficiencies. For example, when asked why she had experienced stress, claimant’responded that it was because she “had been given three [PIPs] in less than a year” concerning issues for which she believed she was being singled out or harassed by employer. Claimant was also asked if the PIPs caused her “mental problem” and she responded, “[Y]es, they pushed .:. made this stress on me.” She also testified that her stress started in 2013. That was the year in which employer hired a new director and claimant began receiving the PIPs and job performance criticism. In further explaining the reason for> her stress, claimant testified: “[I]t wasn’t just the PIP[s]. It was the way [employer was]-coming after me.”[3]
■ IT64'Hence, the record fully supports the hearing officer’s finding that claimant’s arixi-ety, depression, and resulting inability to complete the report were caused by her past job performance deficiencies, which were volitional. And the hearing officer was not persuaded by claimant’s testimony that those issues arose from targeting or discrimination and, instead, found that they were based on claimant’s volitional conduct of not performing her job.
¶ 65 Although claimant’s job-related (more accurately, poor job performance-related) anxiety and depression eventually rendered her unable to complete or present the report, based on the hearing officer’s record-supported" finding that claimant created that circumstance through her previous and volitional poor job performance, I perceive no error in the hearing officer’s conclusion that claimant was at fault for the job separation. See Cole, 964 P.2d at 619; Richards, 919 P.2d at 934.
¶ 66 The majority concludes, however, that the cause of the claimant’s mental condition is irrelevant. I disagree.
¶ 67 Nothing in the language of subsection (4)(j) prohibits inquiry into the cause of the worker’s inability. Moreover, prohibiting such an inquiry is inconsistent with two critical overarching principles in- unemployment benefit cases: (1) that the actual reason for a claimant’s job separation determines whether she is entitled to receive benefits, see Debalco Enters., 32 P.3d at 623; Eckart, 775 P.2d at 99; and (2) the decision whether to award benefits must “at all times be guided by the principle that unemployment insurance is for the benefit of persons unemployed through no fault of their own.” § 8-73-108(l)(a).
*771 ¶ 68 The hearing officer could properly consider whether claimant was.ultimately responsible for her inability to complete .and present the report. And if, as here, the evidence arguably might support application of more than one subsection of the unemployment statutes — in this case section 8-73-108(5)(e)(XX) or section 8-73-108(4)(j)— hearing officers have' wide discretion in determining which subsection to' apply. See Goodwill Indus. of Colorado Springs v. Indus. Claim Appeals Office, 862 P.2d 1042, 1046 (Colo.App.1993).
¶ 69 In concluding that inquiry into a cause of inability to perform a job satisfactorily is not allowed, the majority notes that a claimant is necessarily at fault for any educational deficiency rendering her unable to perform the job, and yet loss of a job because of an educational deficiency entitles a claimant to a full award of benefits. See § 8 — 73—108(4)(j). But poor job performance does not cause an educational deficiency; that is — an educational deficiency cannot have a job-relatéd cause. So the majority’s analogy is inapposite. True, poor job performance ordinarily does not cause a mental condition, but, as this case demonstrates, it can. And that is why inquiry into the underlying cause of the mental condition is appropriate. Consider the following hypothetical.
¶ 70 Employee Smith performs her job poorly, despite her best efforts.[4] Her employer puts her on improvement plans and criticizes her performance, but Smith’s performance does not improve so the employer terminates Smith. In Smith’s cash, the employer’s actions did not cause her to suffer any anxiety or depression rising to the level of a mental condition.
¶ 71 Employee Wilson performs the same job as Smith and performs deficiently in the same ways and to the same extent as Smith. The employer takes the same actions regarding Wilson as it took regarding Smith. Wilson’s performance also does not improve, and the employer terminates her. However, unlike'Smith, the employer’s actions vis-a-vis Wilson’s job performance caused her anxiety and depression to an extent constituting a diagnosable mental condition before she was terminated.
¶ 72 Under the majority’s application of the statutes,'' Wilson 'gets benefits though Smith does not. This seems to me tó be an odd application of the concept of fault. Perhaps the General Assembly intended such an odd result, but I doubt it. It seems-much moré likely to me that the General Assembly intended the mental inability exception to apply when the mental inability is not merely a reaction to an employer’s justified and reasonable responses tó an employee’s poor job performance. See Mounkes v. Indus. Claim Appeals Office, 251 P.3d 485, 487 (Colo.App.2010) (unemployment compensation statutes, like other statutes, must, be interpreted in a way to give them sensible effect). •
¶ 73 Though I do not question claimant’s diagnosis, I fear that the majority’s application of-the law will encourage underperform-ing employees to claim that they ultimately cannot be held responsible for their poor job performance merely because that poor performance caused them stress.

. The majority euphemistically acknowledges that claimant "attributed her mental'health problems to job-related circumstances." (Emphasis added.) Her testimony is actually crystal -clear that claimant attributed her mental health problems to job-related stress caused by the employer’s responses to her perceived poor job performance.

. The majority deems the two employees in my hypothetical dissimilarly situated. But both have the same job, do the same work poorly in the same ways, and are treated the same by their employer. That they react differently to the consequences flowing from their poor performance does not render them dissimilarly situated. Cf. Kendrick v. Penske Transp. Servs., Inc., 220 F.3d 1220, 1232 (10th Cir.2000) (employees are similarly situated for purposes of a disparate treatment claim if they deal with the same supervisor and are subject to the same standards governing performance evaluation and discipline).