25CA2272 Nakagaki v ICAO 04-16-2026

COLORADO COURT OF APPEALS

---

Court of Appeals No. 25CA2272
Industrial Claim Appeals Office of the State of Colorado
DD No. 16035-2025

---

Brittany Nakagaki,

Petitioner,

v.

Industrial Claim Appeals Office of the State of Colorado and Eastern Rio Blanco
County Health Services District, d/b/a Pioneers Medical Center,

Respondents.

---

ORDER AFFIRMED

Division V
Opinion by JUDGE TOW
Welling and Lipinsky, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced April 16, 2026

---

Brittany Nakagaki, Pro Se

No Appearance for Respondent Industrial Claim Appeals Office

Bechtel & Santo, Michael C. Santo, Keely McCabe, Grand Junction, Colorado,
for Respondent Eastern Rio Blanco County Health Services District

¶ 1     Brittany Nakagaki appeals an order denying her claim for unemployment benefits. We affirm.

## I.     Background

¶ 2     Nakagaki worked as a hospital sterilization technician until her employer, East Rio Blanco County Health Services District (Employer), discharged her. Shortly thereafter, a deputy for the Division of Unemployment Insurance (Division) granted Nakagaki's claim for unemployment benefits. Employer appealed that decision, and the Division conducted an evidentiary hearing regarding the reasons for Nakagaki's job separation.

¶ 3     After the hearing, the hearing officer found that Employer discharged Nakagaki "for not following instructions given to her, not following sterilization procedures, and refusing to do work she was asked to do." He further found that Nakagaki "was reasonably aware of the standards of her position and failed to meet them on multiple occasions." The hearing officer concluded that Nakagaki was disqualified from receiving unemployment benefits for failing to meet "established job performance or other defined standards" under section 8-73-108(5)(e)(XX), C.R.S. 2025.

¶ 4    Nakagaki appealed to the Industrial Claim Appeals Office (Panel).  The Panel affirmed, holding that the hearing officer's factual findings "support the conclusion that [Nakagaki] is at fault for the separation from employment, and the disqualification is therefore warranted pursuant to [section] 8-73-108(5)(e)(XX)."

## II.    Standard of Review and Legal Principles

¶ 5    We may not disturb factual findings "supported by substantial evidence" and may only set aside the Panel's decision if (1) the Panel acted without or in excess of its powers; (2) the decision was procured by fraud; (3) the factual findings do not support its decision; or (4) the decision is erroneous as a matter of law. § 8-74-107, C.R.S. 2025.  Evidence is substantial if it is "probative, credible, and competent, of a character which would warrant a reasonable belief in the existence of facts supporting a particular finding, without regard to the existence of contradictory testimony or contrary inferences."  *Rathburn v. Indus. Comm'n,* 566 P.2d 372, 373 (Colo. App. 1977).

¶ 6    Section 8-73-108(5)(e)(XX) disqualifies a claimant from receiving benefits if their "failure to meet established job performance or other defined standards" caused their job

separation. To evaluate cause, the hearing officer considers the totality of the evidence and determines the motivating factors in the employee's separation. *Eckart v. Indus. Claim Appeals Off.*, 775 P.2d 97, 99 (Colo. App. 1989). "All that is required to establish a disqualification pursuant to [section] 8-73-108(5)(e)(XX) is that claimant did not do the job for which [they were] hired and which [they] knew was expected of [them]." *Pabst v. Indus. Claim Appeals Off.*, 833 P.2d 64, 64-65 (Colo. App. 1992).

¶ 7 The disqualifying provisions of section 8-73-108(5)(e)(XX) "must be read in light of the express legislative intent . . . to provide benefits to those who become unemployed through 'no fault' of their own." *Cole v. Indus. Claim Appeals Off.*, 964 P.2d 617, 618 (Colo. App. 1998) (quoting § 8-73-108(1)(a)). Thus, even if the hearing officer's findings may support a disqualification under that subsection, a claimant may still be entitled to benefits if the totality of the circumstances establishes that their job separation occurred through no fault of their own. *Id.* In this context, "fault" requires a volitional act or "the exercise of some control or choice by the claimant in the circumstances resulting in the separation such that the claimant can be said to be responsible for the separation." *Id.*

## III.   Discussion

### A.   Established Job Performance Standards

¶ 8    Nakagaki does not challenge the hearing officer's finding that she was terminated for failing to perform tasks as instructed. However, we discern that she argues that the hearing officer (and subsequently, the Panel) erred by finding that her nonperformance disqualified her because, according to Nakagaki, Employer often instructed her to perform tasks incorrectly, and "[r]efusing to perform an unsafe act does not constitute misconduct or insubordination."  We are not persuaded by this argument because the hearing officer did not find that she was disqualified for misconduct or insubordination.  Rather, he found that she was disqualified for failing to meet established job performance or other defined standards.  We perceive no error in the hearing officer's findings or analysis.

¶ 9    The hearing officer found that Employer set forth explicit standards for sterilizing tools and that Nakagaki violated those standards.  Specifically, the hearing officer found that, "[o]n June 13, 2024, [Nakagaki] was told ahead of time which cycle she needed to put instruments on to sterilize them[,] [but she] put the

4

instruments on the wrong cycle and they had to be rewashed." The hearing officer also found that, "[o]n June 18, 2024, [Nakagaki] used the wrong cycle and wrong washer and instruments had to be rewashed." And "on June 19, 2024, [Nakagaki] was told that Thompson retractors needed to be washed in washer #3[,] [but she] did not follow this instruction and the instruments had to be rewashed." Finally, the hearing officer found that, on June 12 and June 17, 2024, Nakagaki failed to wash trays as instructed. Substantial evidence in the record supports these findings.

¶ 10     At the hearing, Employer presented testimony from Jill Adcock, Employer's Director of Compliance. Adcock testified regarding each of the foregoing incidents, noting that Nakagaki had received direct communication regarding Employer's sterilization standards and failed to meet them on those occasions. Though Nakagaki's testimony largely contradicted Adcock's on these points, we do not reweigh the evidence or second-guess the hearing officer's credibility determinations. *Sanchez v. Indus. Claim Appeals Off.*, 2017 COA 71, ¶ 57. Substantial evidence supports the hearing officer's findings, and those findings, in turn, support the hearing officer's and Panel's ultimate conclusions that Nakagaki was

disqualified from receiving benefits under section 8-73-108(5)(e)(XX) and was at fault for her employment separation.

¶ 11     Though the hearing officer's evidentiary factual findings arguably could have supported a disqualification under section 8-73-108(5)(e)(VI), which disqualifies claimants for "[i]nsubordination such as: [d]eliberate disobedience of a reasonable instruction of an employer or an employer's duly authorized representative," neither the hearing officer nor the Panel invoked that subsection. The hearing officer has broad discretion in determining which of multiple potentially applicable disqualification subsections it will apply, and disqualification is appropriate when employment separation occurs for any of the reasons articulated in subsection (5)(e). § 8-73-108(5)(e); *see Mountain States Tel. & Tel. Co. v. Indus. Comm'n*, 697 P.2d 418, 420 (Colo. App. 1985) (the hearing officer has broad discretion in applying statutory subsections). Because Nakagaki was not disqualified for insubordination, whether she actually was insubordinate makes no difference to our disposition.

## B. Public Policy Exception

¶ 12    Nakagaki further argues that she is entitled to a full benefits award because Employer's sterilization standards and protocols conflicted with applicable "regulations" governing sterilization, and public policy "protect[s] employees who refuse to engage in unsafe, unethical, or unlawful conduct." In connection with this argument, Nakagaki references multiple cases, most of which concern other states' public policies and thus do not control here.

¶ 13    The two Colorado cases she cites — *Martin Marietta Corp. v. Lorenz*, 823 P.2d 100 (Colo. 1992), and *Jaynes v. Centura Health Corp.*, 148 P.3d 241, 243 (Colo. App. 2006) — are unhelpful to her. *Martin Marietta* determined that Colorado recognizes a cause of action for wrongful discharge pursuant to a public policy exception to the at-will employment doctrine. 823 P.2d at 108. *Jaynes* applied *Martin Marietta*. 148 P.3d at 243. Neither applies here.

¶ 14    Because "wrongful discharge" is a cause of action independent from the Employment Security Act, neither the Division nor the Panel has jurisdiction over such a claim. §§ 8-71-102(1), 8-74-102, 8-74-103, 8-74-104, C.R.S. 2025. Thus, they could not and did not adjudicate any wrongful discharge claim Nakagaki may have

7

asserted against Employer. Nakagaki would need to bring this claim in a trial court of general jurisdiction. Colo. Const. art. VI, § 9(1); §§ 8-71-102(1), 8-74-102, 8-74-103, 8-74-104. We cannot adjudicate it now, as no trial court has ruled on the claim; we are an appellate court that cannot adjudicate claims in the first instance. § 13-4-102, C.R.S. 2025; *see Doe v. Wellbridge Club Mgmt. LLC*, 2022 COA 137, ¶ 31 (the Colorado Court of Appeals is "a court of review, not of first view").

¶ 15    Nor may we otherwise apply wrongful discharge principles here because the Colorado Supreme Court has expressly held that "principles concerning wrongful discharge . . . are not determinative of the entitlement and 'fault' issues in an unemployment compensation benefits case." *Keil v. Indus. Claim Appeals Off.*, 847 P.2d 235, 239 (Colo. App. 1993) (noting that the unemployment statutory scheme is an organic statute, "basically standing alone," and that Colorado courts have consistently "refused to engraft" other law onto it). Accordingly, we reject Nakagaki's public policy argument.

## C. Hazardous Working Conditions

¶ 16    To the extent Nakagaki argues that she is entitled to a full benefits award pursuant to section 8-73-108(4)(c), that argument also fails.  Subsection (4)(c) provides for a full benefits award when the employee separated from a work environment as a result of "[u]nsatisfactory or hazardous working conditions." § 8-73-108(4)(c); *see Yotes, Inc. v. Indus. Claim Appeals Off.*, 2013 COA 124, ¶ 25 ("Under section 8-73-108(4)(c), if the [Division] determines that a person has been separated from a job as the result of unsatisfactory or hazardous working conditions, it must award that person full benefits.")  Though Nakagaki makes no express reference to subsection (4)(c), she contends that Employer fostered hazardous working conditions and thereby unnecessarily exposed employees to contaminants.  She further contends that Employer terminated her, in part, in retaliation for raising concerns about this.

¶ 17    Because Nakagaki represents herself in this matter, we construe her argument liberally.  *See Cikraji v. Snowberger*, 2015 COA 66, ¶ 10.  In so doing, we discern that she invokes subsection (4)(c)'s substance.  We thus analyze her argument

through its lens.  *See id.* (We address a pro se litigant's arguments "to the extent we can discern them."); *see also People v. Cali*, 2020 CO 20, ¶ 34 (courts elevate substance over form when analyzing a pro se litigant's pleading).

¶ 18    Nakagaki contends that, because Employer stored personal protective equipment (PPE) like shoe covers, gowns, and gloves "at the back of the decontamination room[,]" accessing it required walking through the "soiled decontamination area" unprotected. She states that Employer terminated her because, among other reasons, she asked that the PPE be moved "from the back of the room to the front."  Nakagaki argues that the hearing officer and Panel erred by failing to find that her employment separation resulted from her report of a hazardous working condition.  We disagree.

¶ 19    Nakagaki bore the burden of proving that a hazardous condition resulted in her employment separation.  *See Ward v. Indus. Claim Appeals Off.*, 916 P.2d 605, 607-08 (Colo. App. 1995) (Claimant "must present evidence to justify the acts which led to the separation and show that [they are] entitled to benefits under the provisions of § 8-73-108(4).").  Significantly, it is undisputed

that the hearing officer provided Nakagaki with a sufficient opportunity to present her evidence. Indeed, at the close of her hearing testimony, the hearing officer asked her, "Is there anything else related to how this separation occurred that you have not testified about yet?" Nakagaki responded, "No."

¶ 20 During her testimony, Nakagaki stated that she raised a concern about PPE placement to her supervisor. Specifically, Nakagaki testified that she told her supervisor that, "in order to keep everything as sterile as possible, [the PPE] really should be at the front of [the decontamination area] so we're not walking through all of the soiled area to get to the PPE." Nakagaki then testified that her supervisor "directed [her] who to talk to and where to go" with her concern. Nakagaki did not testify that her supervisor retaliated against her for raising this concern, nor did she otherwise offer any evidence that Employer terminated her in connection with it. To the contrary, she suggested that her supervisor assisted her in processing her concern.

¶ 21 As noted above, we may not reweigh any evidence or second-guess the hearing officer's credibility determinations. *Sanchez*, ¶ 57. Even if we could, we perceive no basis on which the

11

hearing officer could have found a causal connection between a hazardous condition related to the placement of PPE and Nakagaki's employment separation.

¶ 22    Nakagaki also argues that Employer instructed her to "use broken parts from [one] washer in a washer that was working," and that she "refused" for reasons including "employee safety" concerns. She argues that "failure to follow this specific instruction was a reason" Employer discharged her. However, at the hearing, she did not testify that she refused to follow the instruction, nor did she testify that swapping parts from one washer to use in another constituted a safety hazard. Rather, Nakagaki testified that she engaged in a "conversation about a washer that was down and swapping the rack." She testified that she didn't "refus[e] to do anything," but rather expressed "a concern that since the washer was down, parts of that washer might not work appropriately." Nakagaki did not testify that Employer discharged her in connection with this concern. Again, we perceive no basis on which the hearing officer could have found that a hazardous condition related to exchanging washer parts resulted in Nakagaki's employment separation.

## D.  Additional Issues

¶ 23    Nakagaki also argues that she "experienced retaliation in many forms" apart from discharge, including denying her employee housing, fomenting resentment amongst her colleagues, and forbidding her from retrieving a pair of shoes from the workplace post-discharge.  However, Nakagaki does not explain how any of these incidents related to her discharge, and we discern no obvious connection.  Because this argument is insufficiently developed, we decline to further consider it.  *See People v. Wallin*, 167 P.3d 183, 187 (Colo. App. 2007) (declining to address perfunctory, conclusory arguments).

¶ 24    Finally, we decline to consider Nakagaki's undeveloped suggestion that the hearing officer (and subsequently, the Panel) erred by concluding that she was disqualified from receiving benefits because Employer produced no evidence of (1) written disciplinary reports documenting her failure to follow instructions or (2) progressive disciplinary actions.  Again, Nakagaki fails to explain how either alleged evidentiary deficiency requires that we set aside the Panel's order, nor does she cite any legal authority supporting her argument.

## IV. Disposition

¶ 25 We affirm the Panel's order.

JUDGE WELLING and JUDGE LIPINSKY concur.